JOHN E. JOHNSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 18, 1903—Rehearing denied April 15, 1903.*

1. INDICTMENT—*when allegation in indictment for rape refers to time
of crime.*  An allegation in an indictment for rape that the accused,
"a male person over the age of sixteen years," did, on a certain
date, carnally know a female child under the age of ten years,
refers to the time of the crime and not to the time of the indict-
ment, and sufficiently charges the crime of rape under the statute,
even though the consent of the female is shown.

2. SAME—*sufficiency of indictment for statutory offense.*  If a statute
sets forth specifically what acts shall constitute an offense, it is
generally sufficient for the indictment to charge the accused with
acts coming fully within the statutory description, in the substan-
tial words of the statute.

3. RAPE—*section relating to rape not repealed by act of 1899, relating
to seduction.*   Section 237 of division 1 of the Criminal Code, defin-
ing rape, was not repealed by the act of 1899, (Laws of 1899, p. 148,)
relating to the seduction of females.

4. SAME—*fact that child is brought up in evil surroundings is no de-
fense to charge of rape.*   That a child under fourteen years of age is
brought up in evil surroundings, among inmates and employees of
houses of ill-fame, furnishes no defense to a prosecution for rape,
although the act was committed with her consent.

5. SAME—*when conviction for rape will be sustained.*  Conviction for
the rape of a child eight years old will be sustained even though
it rests principally upon the testimony of the child, when such tes-
timony is corroborated by many circumstances and it is admitted
that the accused was sleeping with the child at the time.

6. EVIDENCE—*when an error in admitting testimony will not reverse.* Error in admitting testimony, over objection, that the accused was intoxicated at the time he is charged with committing the crime of rape will not reverse, where the competent evidence in the case clearly justified the verdict.

7. SAME—*when proof of other misconduct will not reverse.* Permitting evidence to go to the jury that accused, charged with the crime of rape, frequented houses of ill-fame, is not ground for reversal where such proof came from the accused himself in answer to questions by his own counsel.

8. APPEALS AND ERRORS—*putting definitions of reasonable doubt in separate instructions will not reverse.* Putting correct rules of law as to what constitutes reasonable doubt into separate instructions instead of combining them in one is not ground for reversal.

9. SAME—*when refusal to allow a motion is not ground for reversal.* Refusal to allow a motion to require the sheriff to notify the witnesses of accused that they had a right to the same fees as were limited by resolution of the county board to the People's witnesses will not reverse, where no harm is shown to have resulted to the accused from such ruling, in the matter of his obtaining evidence.

10. SAME—*court has some discretion in the matter of allowing leading questions to young child.* The court has some discretion in the matter of allowing leading questions to be put to a witness of tender years, and it is only where such discretion is abused that a court of review will reverse for that cause.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

This is an indictment against the plaintiff in error at the September term, 1902, of the Tazewell county circuit court for the crime of rape, alleged to have been committed on Leah Hickman, a female child of the age of eight years. The jury returned a verdict, finding the plaintiff in error guilty in manner and form as charged in the indictment, fixing his punishment at five years in the penitentiary, and finding his age to be thirty-nine years. Motions for new trial, and in arrest of judgment, were overruled, and the court entered judgment upon the verdict, and sentenced plaintiff in error to confinement in the penitentiary for five years. The present writ of error is sued out for the purpose of reviewing the judgment so entered.

The indictment consisted of three counts. The first count alleges: "The grand jurors, etc., * * * upon their oaths present that John E. Johnson, *alias* Jack Johnson, a male person over the age of sixteen years late of said county, on the 18th day of February in the year of our Lord one thousand nine hundred and two at and within the said county of Tazewell and State of Illinois aforesaid, in and upon one Leah Hickman, a female child under the age of ten years, to-wit, of the age of eight years, feloniously did make an assault, and her, the said Leah Hickman, then and there feloniously did unlawfully and carnally know and abuse, contrary to the form of the statute," etc.

The second count after the formal part, etc., alleges, etc., "that John E. Johnson, *alias* Jack Johnson, a male person over the age of sixteen years late of said county, on the 18th day of February in the year of our Lord one thousand nine hundred and two at and within the said county of Tazewell and State of Illinois aforesaid, did unlawfully and feloniously make an assault in and upon one Leah Hickman, then and there being a female person under the age of fourteen years, to-wit, of the age of eight years, and her the said Leah Hickman, then and there wickedly, unlawfully and feloniously did ravish and carnally know, contrary to the * * * statute," etc.

The third count alleges: "The grand jurors, etc., * * * present: 'That John E. Johnson, *alias* Jack Johnson a male person of the age of sixteen years and upwards late of said county, on the 18th day of February in the year of our Lord one thousand nine hundred and two at and within the said county of Tazewell and State of Illinois aforesaid, in and upon one Leah Hickman, a female child under the age of ten years, to-wit, of the age of eight years, feloniously did make an assault with intent, her, the said Leah Hickman then and there feloniously to carnally know and abuse, contrary to the * * * statute," etc.

W. B. COONEY, for plaintiff in error.

H. J. HAMLIN, Attorney General, and G. W. CUNNING-
HAM, State's Attorney, (GEORGE B. GILLESPIE, of coun-
sel,) for the People.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion
of the court:

*First*—Plaintiff in error made a motion to quash the
indictment, which motion was overruled by the trial
court; and the first error here assigned is, that the court
below erred in refusing to quash the indictment, for the
reason that it does not aver that, at the time the crime
sought to be charged was committed, plaintiff in error
was of the age of sixteen years and upwards.

The contention of the plaintiff in error is, that the in-
dictment is so drawn as to make the allegation of age
apply to the time when the indictment was found, rather
than the time when the offense is alleged to have been
committed. We do not think that the three counts in the
indictment, which are set forth in the statement preced-
ing this opinion, are justly subject to such an interpre-
tation. The section of the Criminal Code, under which
the indictment is found, is as follows: "Rape is the carnal knowledge of a female, forcibly and against her will.
Every male person of the age of sixteen years and up-
wards, who shall have carnal knowledge of any female
person under the age of fourteen years, either with or
without her consent, shall be adjudged to be guilty of
the crime of rape: *Provided*, that every male person of
the age of fourteen years and upwards, who shall have
carnal knowledge of a female forcibly and against her
will, shall be guilty of the crime of rape. Every person
convicted of the crime of rape shall be imprisoned in the
penitentiary for a term not less than one year, and may
extend to life." (1 Starr & Curt. Ann. Stat.—2d ed.—
p. 1339; Crim. Code, div. 1, sec. 237). Under this statute,

when the male person, charged with the crime, is of the age of sixteen years and upwards, and the female person is under the age of fourteen years, the crime of rape is committed, whether the act is done with or without the consent of such female person. The position of plaintiff in error is, that the acts, constituting the offense, are all set forth, so as to show that they were done with the consent of the prosecutrix; and it is claimed to be an essential element of the crime in charging this offense, that plaintiff in error was of the age of sixteen years and upwards, and that the indictment must aver that such was the age at the time of the commission of the crime, and not at the time the indictment was found. (Bishop on Statutory Crimes,—3d ed.—sec. 486). In the first and second counts of the indictment, the age of the plaintiff in error is alleged to be over sixteen years, and in the third count the age is alleged to be sixteen years and upwards. It is true that the indictment does not contain a formal averment that John E. Johnson *was* a male person over the age of sixteen years, or of the age of sixteen years and upwards. But John E. Johnson is referred to as "a male person over the age of sixteen years," and "a male person of the age of sixteen years and upwards." This designation does not refer to the time when the indictment was found, but relates to the time when the crime was committed, to-wit, on February 18, 1902.

The indictment is in the language of the statute creating the offense. It states "that John E. Johnson, *alias* Jack Johnson, a male person over the age of sixteen years late of said county, on the 18th day of February in the year of our Lord one thousand nine hundred and two * * * in and upon Leah Hickman, a female child under the age of ten years, to-wit, of the age of eight years, feloniously did * * * carnally know," etc. Section 6 of division 11 of the Criminal Code provides: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states

the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 1389). It has been held by this court that, where the offense is statutory, that is, where the statute specifically sets out what acts shall constitute the offense, it is, as a general rule, sufficient in an indictment to charge the defendant with acts, coming fully within the statutory description, in the substantial words of the statute without any further expansion of the matter. (*Loehr* v. *People*, 132 Ill. 504; *Scott* v. *People*, 141 id. 195). As a general rule, it is not necessary in an indictment for the crime of rape to aver the age of the person charged with committing the rape. (*People* v. *Ah-Yek*, 29 Cal. 576; 2 Bishop's New Crim. Proc. sec. 954).

We are of the opinion that no error was committed in overruling the motion to quash the indictment for the reasons stated.

Counsel for plaintiff in error insists that section 237, above quoted, has been repealed by an act approved April 19, 1899, entitled "An act to punish the seduction of females." (Laws of Ill. 1899, p. 148.) The act of 1899 provides that any person, who shall seduce, etc., any unmarried female under eighteen years of age, etc., shall, on conviction, be punished by a fine or by imprisonment in the county jail, etc. Section 237, as above quoted, and the act of 1899, relate to different subjects. The statute on the subject of seduction cannot be held to have repealed any portion of the statute against rape. Under the statute of 1899, the crime of seduction may be committed upon any female of previous chaste character under the age of eighteen years, while, under the statute against rape, the offense may be committed upon a female under the age of fourteen years without respect to the character of her previous life, and without reference to the fact whether the assault was committed with or without consent.

*Second*—Before the jury was empaneled, the plaintiff in error made a motion to instruct the sheriff to notify the plaintiff in error's witnesses, that they would have a right to receive the same fees as witnesses for the People, under the rule of the board of supervisors of said county. This motion was supported by affidavits of the plaintiff in error, and of his counsel. From these it appears that, under a resolution adopted by the county board of supervisors of Tazewell county, witnesses were paid fees for attending before the grand jury, and for three days' attendance in criminal trials in courts, when subpœnaed by the People. The resolution provided that witnesses, subpœnaed by the prosecution in cases before the circuit or county court, be allowed their actual railroad fare the same as witnesses before the grand jury, and one dollar per day for not to exceed three days. The plaintiff in error contended that, as this resolution provided for the payment of the fees of witnesses for the prosecution by the county, he was in some way prejudiced, unless the sheriff was notified that his witnesses would be entitled to the same fees as the People's witnesses. We pass no opinion upon the validity or legality of this resolution, but it is not made to appear in any way that this resolution operated prejudicially against the plaintiff in error upon the trial for the crime, here charged against him. It does not appear that he failed to obtain any evidence, or the testimony of any witness, in consequence of the resolution of the board. Whether it be true or not, as is claimed by the counsel for plaintiff in error, that the board of supervisors exceeded its authority in establishing the rule in question, such rule could not be impugned in this proceeding. There being no showing that the resolution or order of the county board affected the trial of plaintiff in error prejudicially, the trial court committed no error in refusing to entertain the motion.

*Third*—Counsel for plaintiff in error makes the objection that some of the instructions given by the court were erroneous; but no specific objection is pointed out to any of the instructions, except a general instruction upon the subject of reasonable doubt. The court gave five or six different instructions, and marked each with the word "given," defining the different elements, going to make up what has been decided by this court to constitute "reasonable doubt." It is not contended by the plaintiff in error that either, or any, of the instructions, thus marked "given," contains an incorrect definition of reasonable doubt, but the complaint seems to be that one instruction, embodying all the definitions, was not given, instead of putting each definition in a separate instruction. We fail to see how plaintiff in error was injured in any way by this method of informing the jury what reasonable doubt was. If all the definitions, contained in these different instructions, were embodied in one instruction, they would conform to the views of this court upon the subject of reasonable doubt, as set forth in the cases heretofore decided by it upon that subject. (*Miller* v. *People*, 39 Ill. 457; *May* v. *People*, 60 id. 119; *Connaghan* v. *People*, 88 id. 460; *Dunn* v. *People*, 109 id. 635; *Spies* v. *People*, 122 id. 1; *Little* v. *People*, 157 id. 153). For instance, one of the instructions stated to the jury that the term "reasonable doubt" means in law a serious, substantial doubt, and not a mere possibility of a doubt. Another instruction states that the doubt must, as the term indicates, be reasonable; still another, that it must be such a doubt as a reasonable and prudent man would entertain after carefully considering the whole evidence; and still another, that it must not be a doubt, based upon a mere conjecture or supposition that has not been proved, etc. While all these elements, entering into the definition of reasonable doubt might have been embodied in one instruction, yet counsel has not made it plain to

us that plaintiff in error was in any manner prejudiced by stating them to the jury in separate instructions.

Counsel for plaintiff in error alleges as error, the refusal by the trial court of two instructions, asked by plaintiff in error upon the trial below, and the modification of an instruction asked by the plaintiff in error and given as modified. The objections thus made rest entirely upon the theories of plaintiff. in error as to the effect of the act of 1899 upon the previous statute in regard to rape, and as to the alleged defective character of the indictment in not more specifically averring the age of the plaintiff in error. No error was committed by the court in this respect for the reasons already stated.

*Fourth*—The main objections, however, here urged upon our consideration by counsel for plaintiff in error, relate to the evidence in the case, and to the rulings of the trial court upon the evidence. Under this branch of the case, it is assigned as error by the plaintiff in error, that the trial court erred in admitting evidence as to the intoxication of plaintiff in error, and in admitting evidence that he frequented sporting houses, or houses of ill-fame; and in permitting the prosecuting attorney to address leading questions to the prosecutrix, while she was upon the stand, and in refusing to allow evidence to be introduced of the sanitary conditions, and other surroundings, under which the prosecutrix lived.

In considering the objections last referred to, it will be necessary to advert to the testimony, although it is exceedingly vulgar and revolting in its character. The little girl, against whom the offense here charged was committed, was not quite nine years old. She lived in Pekin, Tazewell county, with her aunt and uncle, whose names were Maurice Tuckman and Sophia Tuckman. She was the daughter of Mrs. Sophia Tuckman's brother. The Tuckmans lived in a small house which had been a wagon house. It had three rooms. Partitions had been run in such a way as to form one large room on the north

side of the house and the south side of the house was divided into two small rooms. Mr. and Mrs. Tuckman slept in the large room. A door opened into one of these small rooms where there was a bed. The other room, as we understand the evidence, was the kitchen. In January, 1902, while Mr. and Mrs. Tuckman and Leah Hickman, the prosecutrix, were living in this house, plaintiff in error came there with a woman, who is described by the little girl as his wife, but who is shown by other portions of the testimony not to have been his wife. While plaintiff in error was there with this woman, he occupied the bed in one of the smaller rooms. Mr. and Mrs. Tuckman slept in the bed in the larger room, and the little girl slept upon the sofa in the same room with her uncle and aunt. Some time in January the woman, who had been with plaintiff in error, left. The weather became cold, and the child caught cold from sleeping upon the sofa, and she was then put in the bed in the smaller south room to sleep. The plaintiff in error, who was out late at night, came home and found her in the bed where he had been sleeping. He stated to Mr. and Mrs. Tuckman that she could sleep there, and he would do her no harm. Mr. and Mrs. Tuckman permitted her to occupy the same bed with the plaintiff in error. According to the testimony of the girl, plaintiff in error on at least three different nights had intercourse with her. She details the manner, in which he commenced by taking liberties with her, and finally ended by having "carnal knowledge" of her. She states that he hurt her and on the first night, on which he accomplished his purpose, she cried. Mr. Tuckman and his wife, who slept in the adjoining room, say that they heard her sniffling one night, but supposed it was from the cold she had caught by sleeping on the sofa. The child says that she said nothing about what had occurred to her uncle and aunt, because she was afraid to speak of it, and she also states that plaintiff in error threatened to "knock her head off," if she told any-

body about it. There is no question in the evidence at all
about the fact that plaintiff in error occupied the same
bed with this little girl for a week or more, or perhaps
several weeks. He did not always come home at night,
but, when he did come home, he occupied this bed. It is
true that the proof of the crime rests mainly upon the
testimony of the child. But the testimony of the child
is confirmed by a great many different circumstances,
as well as by the testimony of her uncle and aunt. Her
night clothes were soiled, as the effect of what was done,
and their condition was seen by her aunt when her suf-
fering and crying finally led to inquiry and investigation
by her aunt and uncle. A doctor was called in to exam-
ine the child, and his testimony is clear and conclusive,
that her private parts were torn and injured. He states
that, as the effect of the injuries inflicted upon her, she
would never be able to bear children. The whole tes-
timony is revolting in the extreme, but the statements
of the child are confirmed by so many different circum-
stances, that any candid mind, who reads this record,
cannot fail to be convinced of their truth.

On one evening Mr. and Mrs. Tuckman were away
from home, and plaintiff in error came there, and finding
the door closed, knocked it down, or pushed it open, and
entered the house; and when Mr. and Mrs. Tuckman re-
turned, they found him in bed with the child, asleep, or
apparently asleep. They returned about midnight. In
answer to some questions, put to Mr. Tuckman as to
the condition of the plaintiff in error upon the evening in
question, he stated that plaintiff in error was intoxicated.
Under the decision, recently made by this court in *Addi-
son* v. *People*, 193 Ill. 405, the witness should not have been
allowed to state over objection that on that evening the
plaintiff in error was intoxicated. But it is not every
error, committed by the trial court, that will authorize
a reversal by a reviewing court. In *Jennings* v. *People*,
189 Ill. 320, where the indictment was for murder, we

said (p. 324): "We have frequently held, where, in a criminal case, the competent proof clearly justifies the verdict, the fact, that incompetent testimony was admitted, will not necessarily authorize a reversal, if it appears such incompetent testimony could not reasonably have affected the result." (*Jackson* v. *People,* 126 Ill. 139; *Ochs* v. *People,* 124 id. 399).

In *Gilman* v. *People,* 178 Ill. 19, where the plaintiffs in error were found guilty of manslaughter, we said (p. 26): "The plaintiffs in error contend that this evidence is not sufficient to sustain a conviction. Applicable to the facts thus shown, what was said in *McCoy* v. *People,* 175 Ill. 224, not only states the rule of law, but is exceedingly appropriate. On page 229 it is said: 'The law has placed the determination of that question with the jury, and it is only when this court is satisfied, from a careful consideration of the whole testimony, that there is a reasonable doubt of the guilt of the accused that it will interfere with the verdict of the jury on the ground that the evidence does not support the verdict. (*Gainey* v. *People,* 97 Ill. 270). We are satisfied the evidence sustains the verdict of the jury, and that the jury would have been justified in inflicting, under the evidence in the record, a much heavier punishment.'"

In *Ritzman* v. *People,* 110 Ill. 362, it was held as follows: "Although the court, on the trial of a cause, may err in the exclusion of evidence, or in refusing to allow certain questions to be put on cross-examination, yet if this court is fully satisfied, under the facts of the case, that the error could not have affected the result, the error will afford no ground of reversal;" and in the same case we said: "While we think, as already indicated, the ruling of the court on this subject was not sufficiently liberal, yet we are fully satisfied, under the facts in this case, the error in question could not have affected the result, and it, therefore, affords no ground for reversal. * * * The criminal laws of this State must be enforced. And

if it is not already understood, it is high time it should be, that where a case is clearly made out against the accused, and the jury have so found, this court will not reverse for a mere technical error, which it can see could not have affected the result." This court has held in a number of cases that harmless error will not reverse a judgment where the result reached by such judgment is clearly right, nor will it reverse a judgment upon a question not affecting the substantial merits of the case. (*Dunn* v. *People*, 109 Ill. 635; *Wilson* v. *People*, 94 id. 299; *Leach* v. *People*, 53 id. 311; *Kennedy* v. *People*, 40 id. 488; *Dacey* v. *People*, 116 id. 555).

In *Gifford* v. *People*, 148 Ill. 173, it was held as follows: "On the trial of one for the rape of a girl eleven years of age, the testimony of a physician, based on a personal examination made of the person of the girl six months after the alleged rape, that he found a rupture of her hymen, is competent evidence in connection with the other facts and circumstances, to go to the jury. The remoteness of the examination from the time of the alleged rape goes merely to the probative force of the fact, that the hymen was found to be ruptured at the time of the examination, and not to its admissibility."

In the case at bar, the physician, who examined the prosecuting witness, made his examination a few days after the plaintiff in error ceased to occupy the bed with her in the house of the Tuckmans. In his testimony, he says: "I was first called to the house and the aunt exposed the little girl to view. * * * The little girl was brought to the office and placed upon a table. The parts disclosed a violent inflammation that had extended through the uterus and fallopian tubes, and the hymen was torn in perhaps half a dozen different places in various directions like a fracture in the ice or in a pane of glass. The hymen is the partition between the outer parts of a woman's organs of generation and the inner part—a kind of a curtain that is drawn in front of the

womb with a hole in the center of it.   *   *   *   It might be done with any instrument that was too large to pass through this hole in the hymen; a finger would do it, or any other instrument, that was too large to pass through it; an effort at intercourse would do it; because that part of the child is small even for her age.   *   *   *   She had been in that condition I should judge two or three weeks. *   *   *   It is possible to see yet that there has been damage to the hymen, but the tears have healed; it is not as it should be in one of her years.   *   *   *   With a very small speculum I opened the parts, so I could see all of the vagina and the mouth of the uterus;   *   *   *   there was tenderness from the uterus on each fallopian tube on either side and in the ovary on either side;   *   *   * the bladder was not involved which frequently happens. The injury to the little girl's generative organs will probably be permanent." To our minds, the competent proof in this case so clearly justifies the verdict, that the admission of incompetent testimony, to the effect that on one particular night, when the plaintiff in error was in bed with the little girl, he was intoxicated, does not authorize a reversal, as such testimony could not reasonably have affected the result.

We think that the evidence of the child in this case shows upon its face its truthfulness, because it is impossible that a child between eight and nine years of age could have invented the revolting statements made by this child; and, in addition to this, her evidence is abundantly corroborated by other testimony, and by all the facts and circumstances of the case.

Plaintiff in error complains that evidence of his prior misconduct, other than intoxication, was allowed to go before the jury in such a way, that it operated to his detriment and prejudice. The proof, thus objected to, has reference to the visits of plaintiff in error to what are called in the record sporting houses, or houses of ill-fame. An examination of the record shows that this

sort of proof came from the plaintiff in error himself, in answer to questions by his own counsel, and while he was giving evidence in his own behalf. The proof shows that the business of the plaintiff in error was that of a musician, and that he played the piano in houses of ill repute. He himself states, on direct examination, that Tuckman, who was also a musician engaged in playing the piano at vaudeville shows and in houses of this character, "has played around the houses the same as myself when he did not have any work at Eidenmiller's; when they would not have a show, he would fill in his time at Mary Hall's, or Lizzie Eads' sporting houses." Again, he says: "It was twelve o'clock or after; I was then playing at my business at the Band-Box saloon on Court street." And, again, he says that he left the Tuckman house "because Mrs. Tuckman went to cooking for Mary Hall, and was not getting any meals at her own house, and I had to take my meals at a restaurant, and not being there most of the time, I decided to stay away; that was the Mary Hall that ran the sporting house. Mrs. Tuckman was cooking for Mrs. Hall, and the girls." Whatever prejudice may have been produced in the minds of the jury by proof, that plaintiff in error frequented houses of this character, was due as much to testimony produced by himself, as to any evidence produced or called out by the prosecution. It is true that, where a party is on trial upon a criminal charge, the admission of proof of his misconduct, not connected with the charge upon which he is on trial, is error. (*Gifford* v. *People*, 87 Ill. 210; *Addison* v. *People, supra*). But this is not so, where such proof of misconduct is produced by the prisoner himself. In addition to this, the court instructed the jury "that it is highly improper for you to take into account any facts or circumstances tending to show a separate and uncommitted offense, (if any such evidence appears before you), not charged in the indictment. The defendant is on trial only for the charges made in the indict-

ment in this case, and you cannot allow any facts relating to another crime to weigh against him, although you may believe him guilty of some other offense than the one here charged."

Complaint is also made that the prosecuting witness, Leah Hickman, was asked leading questions. Upon an examination of the questions asked, to which objection is thus made, the questions do not appear to be leading in their character, as is claimed by counsel. In one instance, where objection is made that the question was leading, the court particularly cautioned the prosecuting attorney to avoid as much as possible making his questions leading in form. In *Coon* v. *People*, 99 Ill. 368, it was said that the general rule, which holds leading questions to be improper, should be adhered to, as well where the witnesses are of tender age, as where they are adults, but it was at the same time, and in the same connection, said that leading questions might, under some circumstances, be permitted, and that the erroneous toleration by the court of leading questions would not in all cases constitute sufficient cause for reversing a judgment. In that case it was also held that some degree of discretion was vested in the trial court in determining, whether or not any necessity existed for resorting to such questions, and that only where such discretion was abused would a reviewing court feel obliged to reverse. We do not find in this case that any such leading questions were permitted by the court, as would justify a reversal.

It is furthermore objected by the plaintiff in error, that he was not allowed to show the surroundings and sanitary conditions, under which the prosecuting witness lived. We think all this was abundantly shown. The uncle, with whom the prosecutrix lived, was a musician, who played the piano at houses of a disreputable character, and her aunt was a cook, engaged in cooking meals for the inmates of one of these houses. Necessarily, therefore, the surroundings of the child were bad.

The plaintiff in error has produced, upon the trial in this case, quite a number of women, as witnesses, who were inmates of houses of this character, with a view of proving that the reputation of this child for truth and veracity was bad. It may be a serious question, whether a child only eight years of age can be said to have any reputation for truth and veracity, but the fact, that such witnesses were produced and were acquainted with the child, and were asked to state whether, from their knowledge of her, she was truthful or not, sufficiently shows the evil surroundings, in which she lived. None of these circumstances, however, furnished any excuse for the conduct of plaintiff in error, as shown by the proofs in this case.

The judgment of the circuit court of Tazewell county is affirmed.

*Judgment affirmed.*