THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER T. CASEY, Plaintiff in Error.

*Opinion filed December 17, 1907.*

1. CRIMINAL LAW—*insanity is within meaning of section 155 of Criminal Code.* Insanity is within the meaning of section 155 of division 1 of the Criminal Code, providing that "the killing being proved, the burden of proving circumstances of mitigation or that justify or excuse the homicide, will devolve upon the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter or that the accused was justified or excused in committing the homicide."

2. SAME—*when an instruction is not erroneous.* In a murder trial, where insanity is the defense, an instruction stating that "the killing being proved, the burden of producing sufficient evidence to raise in the minds of the jury a reasonable doubt in the defendant's favor of the existence of facts or circumstances of mitigation or that justify or excuse the homicide will devolve on the accused," etc., (closing in the language of section 155 of division 1 of the Criminal Code,) is not erroneous or misleading.

3. SAME—*rule as to proof of insanity.* The legal presumption that all men are sane makes it unnecessary for the People to prove, in the first instance, the sanity of one accused of murder; but if the accused proves facts or circumstances tending to prove his insanity, it then devolves upon the prosecution to prove the sanity of the accused beyond a reasonable doubt, as a necessary element of the crime charged.

4. SAME—*jury must consider all the evidence.* When the defense of insanity is interposed, it is the duty of the jury to consider not only the evidence tending to support the defense of insanity, but all the evidence in the case, and if, after such consideration, they entertain a reasonable doubt of the sanity of the accused at the time the offense was committed, he must be acquitted.

5. SAME—*when instruction does not assume that accused was sane or ignore defense of insanity.* In a murder trial, where the defense is insanity, an instruction stating that the People need not offer direct evidence of an intent to kill in order to establish the crime of murder; that a sane person is presumed to intend the natural, ordinary and probable results of all acts intentionally done, and that if the jury believe, from the evidence, beyond a reasonable doubt, that the defendant was sane when he shot his wife, and that the shooting was without lawful excuse or justification,

and that she died as a result, then they might find that the accused intended to kill her, does not assume that the accused was sane nor ignore the defense of insanity.

6. SAME—*when instruction is not bad for singling out particular evidence.* Where evidence is admitted for a restricted purpose the court may instruct the jury as to the limits within which the evidence may be considered, and such instruction is not open to the objection that it singles out and calls particular attention to a part of the evidence.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

S. H. CUMMINS, for plaintiff in error.

W. H. STEAD, Attorney General, and FRANK L. HATCH, State's Attorney, (W. ST. J. WINES, and JOEL C. FITCH, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was convicted of the crime of murder at the January term, 1907, of the Sangamon county circuit court and sentenced to the penitentiary for a term of forty years. The indictment charges that on May 7, 1906, he shot and killed his wife, Lulu Casey, with a revolver. The testimony was not preserved by a bill of exceptions, but it is set out therein that some fourteen witnesses testified that plaintiff in error shot and instantly killed Lulu Casey, his wife, at their home in Springfield. This fact was not disputed, but some fourteen witnesses were produced by plaintiff in error all of whose testimony tended to show that he was affected with insanity prior to the time of the shooting. The People offered in rebuttal some twenty-five witnesses who testified they were acquainted with plaintiff in error before the said shooting, and that he was, in their judgment, for six months prior to the shooting, sane. There is nothing in the record to indicate as to the credence to be placed in

the respective witnesses. It appears in the brief of plaintiff in error, and is not controverted by the other side, (although not disclosed by the record,) that plaintiff in error was a mail carrier; that he had had trouble with his wife for more than a year previous; that she had filed two suits for divorce against him, and that he claimed he had found letters which his wife had been writing to other men, but that there was no basis shown in the evidence for a belief on his part that his wife was untrue to him. The only errors assigned on the record are the giving of three instructions on behalf of the People.

The chief argument of the plaintiff in error is directed against the tenth instruction given for the People, which reads as follows:

"The court instructs you that, the killing being proved, the burden of producing sufficient evidence to raise in the minds of the jury a reasonable doubt in defendant's favor of the existence of facts or circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter or that the accused was justified or excused in committing the homicide."

If in place of the words, "producing sufficient evidence to raise in the minds of the jury a reasonable doubt in defendant's favor of the existence of facts or," found in the above instruction, had been inserted the word "proving," said instruction would have been an exact copy of section 155 of the Criminal Code. (Hurd's Stat. 1905, p. 704.) While it is admitted that, the killing being proved, this section of the Criminal Code could be properly given as an instruction when the defense set up was mitigation, justification or excuse of the homicide, (*Duncan* v. *People,* 134 Ill. 110,) it is contended that the defense of insanity cannot be considered as coming under any one of these heads, and therefore this instruction is erroneous because not applicable

to the facts in the case. With this contention we cannot agree. In *Hopps* v. *People,* 31 Ill. 385, it is obvious, from a reading of the several opinions in that case, that in discussing the question of insanity the court there held that it should be treated and weighed in the same manner as should the defense of *alibi,* self-defense or accidental homicide. In *Upstone* v. *People,* 109 Ill. 169, the defendant in a homicide case urged that a certain instruction based on the section of the Criminal Code in question was erroneous because it ignored the question of insanity. The court, in discussing that question, said (p. 176): "The instruction recognizes there might be an excuse for the act, and instructions for the defendant abundantly informed the jury that insanity would be a defense, which the jury would take to be an excuse. It does not matter what may be the technical meaning of 'excusable,' but how the jury would understand it, and whatever was a defense they would understand as matter of excuse." The reasoning in that case applies with peculiar force to the facts in this case and must control. Here, as there, the instructions for the defendant abundantly informed the jury that insanity would be a defense, which the jury would take to be an excuse.

It is also urged here that the defense of insanity is of such a nature that it could not so mitigate or alleviate the crime that it could be made manslaughter instead of murder, and that therefore this instruction is misleading in that regard. This same question was also raised in the *Upstone case, supra,* and held without force.

We do not think this instruction conveys the meaning, as contended, that the reasonable doubt had reference to the existence of facts or circumstances in mitigation, justification or excuse of the homicide. It is true, the instruction is awkwardly arranged, but in our opinion the jury would draw the same meaning from this instruction as it is now arranged as they would if the clause, "to raise in the minds of the jury a reasonable doubt in defendant's favor," had

appeared immediately after the words "excuse the homi-
cide." Indeed, if the above quoted clause objected to had
been set off, where now inserted, by dashes, it would plainly
give the same meaning that would be given if it had ap-
peared in the instruction after the word "homicide," as
above stated. The instruction would then plainly mean that
the evidence offered on the part of plaintiff in error would
only have to be of such a nature as to prove such facts or
circumstances in mitigation, justification or excuse as to
raise a reasonable doubt in defendant's favor. This is more
favorable to plaintiff in error than said section 155 of the
Criminal Code would be if copied literally, for this section
of the code makes no reference to the question of reasonable
doubt. Even if the instruction should be construed, as con-
tended, as meaning a reasonable doubt of the existence of
facts or circumstances of the mitigation, justification or ex-
cuse of the homicide, we cannot see how it would harm the
plaintiff in error. In *Langdon* v. *People,* 133 Ill. 382, this
court, in discussing an instruction somewhat similar in
wording, said (p. 403) : "The instruction, however, seems
to convey the idea that before the jury can acquit the de-
fendant on the ground of his insanity they must entertain a
reasonable doubt as to whether or not such affliction was
the efficient cause of the act. * * * In this respect the
instruction is incorrect, but such defect in it was favorable
to the accused and unfavorable to the prosecution. * * *
A jury might not be willing to find that insanity was really
the cause of an act and yet might be in doubt whether such
act was caused by insanity or not. A prisoner is in much
greater jeopardy when his fate depends upon a finding made,
than where such fate is dependent upon a doubt entertained."
If the jury understood this instruction to mean as contended,
then, certainly, as is stated in the *Langdon case,* it demanded
less of plaintiff in error than is required by law.

Much discussion is found in the briefs as to the burden
of proof on the question of insanity in cases of this char-

acter. This court in *Montag* v. *People,* 141 Ill. 75, said (p. 80): "Every man is presumed to be sane, and in the absence of evidence which may raise a reasonable doubt of sanity no evidence need be introduced; but whenever the question of sanity is put in issue by facts, coming from either side, which may raise such doubt, then it devolves upon the People to establish the sanity of the prisoner. * * * In this case the People offered no proof whatever on the question of the defendant's sanity. We are, however, inclined to think that no proof was required."

Counsel quotes from the majority opinion in *Hopps* v. *People, supra,* the following: "Can it be properly said in criminal cases the burden of proof ever shifts, so long as the defendant bases his defense on the denial of any essential allegation in the indictment? We think not. * * * The burden of proof must, therefore, always remain with the prosecution to prove guilt beyond a reasonable doubt." It will be noted that the discussion on the question of insanity in that case (this is especially manifest if the dissenting opinion of Mr. Justice Walker is read in connection with the other two opinions) was whether the proof as to insanity "must be established by at least a preponderance of the evidence" or whether such proof would be sufficient if it only raised a reasonable doubt on this question, and the majority of the court held the latter. This holding has always been followed by this court since that decision. In *Dacey* v. *People,* 116 Ill. 555, this court, in discussing this same question, stated (p. 571): "The presumption of sanity inheres at every stage of the trial until insanity is made to appear by the evidence. The law in this State undoubtedly is, that this legal presumption may be overcome by evidence tending to prove insanity of the accused which is sufficient to raise a reasonable doubt of his sanity at the time of the commission of the act for which he is sought to be held accountable. When that is done the presumption of sanity ceases and the burden shifts to the prosecution, and it is then required to

prove his sanity, as an element necessary to constitute crime, beyond a reasonable doubt." To the same effect is *Jamison v. People,* 145 Ill. 357. Whether the burden of proof on the question of insanity, technically, ever shifts we do not think vital, provided the instructions to the jury make it clear that when the defense of insanity is interposed it is the duty of the jury to consider all the evidence, not only that tending to support the defense of insanity, but all the evidence in the case, and if, after such consideration, they entertain a reasonable doubt of the sanity of the accused at the time of the commission of the alleged offense, he must be acquitted.

This instruction is not open to the criticism made in *Alexander v. People,* 96 Ill. 96, *Smith v. People,* 142 id. 117, and *Appleton v. People,* 171 id. 473, wherein this court found that the instructions there in question practically required the accused to satisfactorily establish the circumstances of mitigation, justification or excuse. In those cases it was held such instructions required the defense to be established beyond a reasonable doubt before the jury would be justified in acquitting. On any construction that could be placed upon the instruction here in question we cannot see how the jury could have been led to believe that this required any such proof. On the contrary, the instruction distinctly conveys the idea that the only thing required of the accused is to have proof that would raise "a reasonable doubt in his favor." In the argument of counsel for plaintiff in error the words "in his favor" seem to have been lost sight of. Moreover, we cannot conceive how this instruction could have misled the jury as to where the burden of proof on the whole case rested or as to what proof is required when the defense is insanity. Fourteen of the instructions given for the accused discussed, in some form, this question. His ninth instruction stated that it was not necessary that insanity should be established by a preponderance of the evidence; that if, upon the whole evidence, the jury had a reasonable doubt as to defendant's sanity they must find him

not guilty. His eleventh instruction stated that in order to sustain the defense of insanity the accused is not required to prove that he is insane, but if, upon 'the whole evidence, the jury entertained a reasonable doubt of his sanity at the time of the shooting they must find him not guilty. His thirteenth instruction stated that to warrant a conviction it was incumbent on the People to establish to the satisfaction of the jury, beyond all reasonable doubt, the existence of every element necessary to constitute the crime charged, and that if, from a careful consideration of all the evidence bearing upon the question of insanity, they entertained a reasonable doubt of defendant's sanity at the time of the offense, he was entitled to the benefit of that doubt and should be acquitted. His fourteenth instruction stated that while the law presumes all men sane, yet this presumption may be overcome by evidence of insanity at the time of the offense; that when such evidence is introduced then such presumption ceases, and the prosecution is bound to prove the sanity of the accused beyond a reasonable doubt. It would seem difficult to have presented to the jury, without repetition, any new doctrine in the defendant's favor in relation to the defense of insanity. Under the authorities this tenth instruction for the People should be read in connection with all the other instructions in the case, and, even though incorrect in some particulars, should not reverse the case unless the court is satisfied that it misled the jury. (*Dacey* v. *People, supra; Johnson* v. *People,* 202 Ill. 53; *Morello* v. *People,* 226 id. 388; *Bleich* v. *People,* 227 id. 80.) There was, however, nothing in this instruction, fairly construed, that is in any way inconsistent with the principles of law that should govern and control where the defense of insanity is interposed, and the other instructions gave correctly and repeatedly the rule contended for by plaintiff in error.

Complaint is also made of the eleventh instruction given in behalf of the People, which stated that it was not necessary for the State to offer any direct evidence of the intent

to kill in order to establish the crime of murder; that a sane person is presumed to intend the natural, ordinary and probable results of all acts intentionally done, and that if the jury believe, from the evidence, beyond a reasonable doubt, that the defendant was sane at the time he made the assault and he willfully and intentionally shot Lulu Casey, and the shooting was without lawful excuse or justification, and she died as a result, then they might find that the accused intended to kill her. It is urged that this instruction assumed that the accused was sane. If there be any assumption in the instruction, (which we do not admit,) it was only as to the facts which were not disputed, and the instruction was not erroneous in that regard. (*Davis* v. *People*, 114 Ill. 86; *Williams* v. *People*, 164 id. 481.) Neither is there any force in the contention that this instruction ignores the issue of insanity. That question was expressly submitted by it to the jury. As an abstract proposition of law the instruction is admitted to be correct, and, considered in connection with the other instructions in the series, we do not see how the jury could have been led to believe that the court assumed that plaintiff in error was sane.

Objection is also made to the thirteenth instruction given for the People, which reads as follows:

"The court instructs the jury that the letters which have been introduced in evidence in this case do not furnish any lawful excuse or justification for the killing of the deceased. Nor would the fact, if it is a fact, that Lulu Casey had been unfaithful to the defendant be any lawful excuse or justification for such killing. The letters are admitted in evidence as a circumstance bearing upon the issue as to the sanity of the defendant at the time of such killing."

The argument is made that the instruction is erroneous because it picks or singles out a part of the evidence and instructs the jury as to that. The letters in question were plainly admissible only for one purpose, as stated in this instruction, and we do not think it comes within the rule in-

voked and laid down by this court in *Hoge* v. *People*, 117 Ill. 35, *Weston* v. *Teufel*, 213 id. 291, and *Wickes* v. *Walden*, 228 id. 56. The letters are not preserved in the record and we are not informed of their contents. As a general proposition, however, it is not error for the court, when certain evidence is admitted for restricted purposes, to instruct the jury as to the limits within which such evidence may be considered. *Carter* v. *Carter*, 152 Ill. 434; *Purdy* v. *People*, 140 id. 46; *Merchants' Loan and Trust Co.* v. *Egan*, 222 id. 494.

On this record we find no error in the giving of the three instructions in question, and as no other grounds have been urged or appear in the record for reversal, the judgment of the trial court will be affirmed.    *Judgment affirmed.*