(No. 15448.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES L. BLACK, Plaintiff in Error.

*Opinion filed October 20, 1923.*

1. CRIMINAL LAW—*when sole issue of fact is whether killing was in self-defense.* In a murder trial, where the defendant admits the killing of his victim while the latter was in his own home and place of business but claims that the latter shot twice before the defendant fired, the sole issue of fact is whether the shooting was justifiable as an act done in self-defense, and instructions covering the whole subject of homicide, many of them inapplicable to the facts, should not be given.

2. SAME—*meaning of general statement that a man's house is his castle.* The general statement in a homicide instruction that a man's house is his castle does not mean that a householder may kill another merely because he is in the house, where there is no intention manifested to commit a felony and no element of danger to any occupant.

3. SAME—*when instruction as to defense of habitation is inapplicable.* An instruction in a murder trial to the effect that the defendants cannot rely upon their claim of self-defense in shooting the deceased if they entered his home unlawfully and against his will, making it necessary for the deceased to use force to expel them, is not applicable where there was no forcible entry or warning not to enter but merely a quarrel over the amount owing for liquor purchased from and served by the deceased to the defendants as customers in his home.

4. SAME—*when an instruction as to declining further combat is improper.* An instruction in a murder trial to the effect that the defendants were not entitled to an acquittal on their plea of self-defense unless they endeavored in good faith to decline further struggle or combat is improper where there was no struggle or combat but only a quarrel and the sudden drawing of weapons.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding.

WILLIAM H. SCHUWERK, and ALFRED D. RIESS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LOGAN F. HACHMAN, State's Attorney, and VIRGIL L. BLANDING, (WILLARD F. ELLIS, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James L. Black, plaintiff in error, and Lat V. Sanford, were indicted in the circuit court of Randolph county charged with the murder on June 22, 1922, of Alex Bokor. Upon a trial a verdict was returned finding the plaintiff in error guilty of manslaughter and finding Sanford not guilty. The plaintiff in error was sentenced on the verdict.

Alex Bokor was a miner living in a one-story four-room cottage at Coulterville with Judith Marte, a married woman separated from her husband and who lived with Bokor under an assumed relation as husband and wife. Bokor and the woman were engaged in the unlawful sale of whisky, wine and homebrew in the cottage, which was a drinking resort frequented by patrons of the business. Both were foreigners, and the woman, who was a witness, spoke very broken English, but their nationality does not appear. At the trial it was admitted that the plaintiff in error killed Bokor in the front room of the cottage by shooting him with a revolver. Both defendants testified to that fact, and the only defense offered was that Bokor shot twice at the defendants and was the aggressor and that the killing was in self-defense. Adjoining the front room, where the shooting took place, was a bed-room with a trap-door at the foot of the bed leading to a place where liquor was kept, and in the rear bed-room and about the premises there were beer barrels, kegs and jugs of wine and a liquor called "white mule." The woman said that they had fifteen or sixteen gallons of blackberry wine. On June 21, 1922, Bokor went in an automobile with Ed. Walker to Belleville looking for a supply of liquor, but not finding any they went to Freeburg and Mascoutah, and at the latter place

got gasoline and liquor. In the absence of Bokor, John Chuchollek and Conrad Sims, two bootleggers from Belleville, came to the cottage with an automobile, bringing about six gallons of whisky for Bokor. Bokor being absent, they slept on the ground in the back yard through the night and in the morning filled a gallon jug with liquor and took it to town and sold it. They came back after Bokor had returned to the cottage and delivered to him the remaining five gallons of whisky, for which he paid $50. During the forenoon there were a number of men in the cottage drinking and being served with liquor, but neither they nor anything they said or did had any connection with the defendants or the homicide, except as to John Vickers, who, was at the cottage twice. He left the premises for a time and came back afterward when the plaintiff in error and Sanford were there. Plaintiff in error, Vickers and others were served with liquor at a table in the front room. Bokor quarreled with Vickers, and there was something said about a blackhand letter which Bokor claimed Vickers had sent him and which Vickers denied. It was difficult for witnesses to understand Bokor, who talked broken English, but Vickers became very drunk and Walter Carroll took him out in the back yard, where he lay down under a tree and went to sleep. Bokor wanted pay from Vickers for liquor and the plaintiff in error went out to Vickers and got five dollars from him. Plaintiff in error had acted as a peacemaker, and testified that he took the five dollars back to Bokor and gave it to him to pay three dollars for the drinks; that Bokor called the woman in and gave her the bill and she came back but did not give him any change. Plaintiff in error demanded either two dollars or a quart of whisky, but Bokor denied receiving the five dollars and the woman was called in, and plaintiff in error testified that she admitted that he had paid the money and that she took it. When she was a witness she did not deny that she received five dollars. After the trouble between the plaintiff

in error and Bokor about the two dollars or a quart of whisky, the plaintiff in error went to the house of Edward Odem, near by, and received from Odem a 38-caliber revolver, which he put inside of his shirt bosom, and he and Odem went back to the cottage and met Bokor in the front room. Plaintiff in error and Sanford testified that Bokor threatened to kill them and went into the bed-room and came out with a revolver; that he shot at plaintiff in error twice and that plaintiff in error then took the revolver from inside his shirt and shot Bokor. The woman had gone to a neighboring cottage and no one was present at the shooting except Bokor and the defendants. There were five shots by plaintiff in error and three of them took effect in Bokor. The defendants left, and the woman hearing the shots came back and found Bokor on the floor. She testified that Bokor, when she found him, had no revolver or weapon, and when the coroner came she went into the bed-room and produced an automatic revolver from under the pillow. It was rusty and had never been fired and was full of cartridges which it was very difficult to extract. She testified that Bokor had no revolver, and on the other hand five witnesses testified that Bokor had a 38-caliber Colt revolver, and one of them was Ed. Walker, who was with Bokor on the trip to Belleville, and said that Bokor had a revolver in the automobile. The defendant Sanford testified that he went back to the cottage at the instance of the plaintiff in error to see if Bokor was dead, and that Bokor was lying on the floor and the woman holding his head and he still had a revolver in his hand. Plaintiff in error testified that there was a lake near Coulterville formed by a railroad embankment, frequented by the public for fishing and other purposes, and that he arranged with Odem the night before to borrow the revolver and go out there and shoot, and that he got it for that purpose. The revolver was loaded, and plaintiff in error only had the cartridges which were in the revolver and which would not last long

for target practice. The evidence for the People was that
there was no mark of any shooting in the room that could
have been done by Bokor and that the bullets could not have
gone through an open window, which was in contradiction
of the testimony of defendants that Bokor did any shooting.

On the trial the court, over the objection of the defend-
ants, permitted testimony of what was said by Bokor and
others who were in the place, being served with liquor, some
time before the homicide, which had no relation whatever
to the defendants and neither referred to them nor con-
cerned them in any way. The sole test made by the court
was the presence of the defendants at the time and not
any relevancy to them or anything they did or the charge
against them. When objection was made to other testi-
mony of what was said in the absence of defendants, the
court said that it showed the situation and it could go in
for that purpose. The situation had no relation to the ques-
tion of guilt or innocence of the defendants. In one case
the court said the testimony was improper but would not
do any harm, and in the closing argument for the People
the State's attorney said that Black had married since he
went to jail to keep out of the penitentiary and had his
wife and child in the court room. On objection the court
said that arguing plaintiff in error married to keep out of
the penitentiary was a little strong and the jury should dis-
regard it. Perhaps what was said in the argument was not
of much importance, but the court erred in the admission
of evidence prejudicial to the plaintiff in error.

The killing having been admitted and testified to by both
defendants, the sole and only question of fact to be submit-
ted to the jury was whether it was justifiable because it was
done in self-defense. The only legitimate object of instruc-
tions to the jury as to the law was to explain what the law
declared the crime to be if the killing was unlawful and
under what circumstances it would be justifiable in neces-
sary self-defense. Notwithstanding the issue and the sole

matter of fact in dispute, the court gave a volume of instructions covering the entire subject of homicide in all its aspects. There were two instructions concerning malice, ignoring the defense interposed. There were five instructions stating the law where there has been a struggle or combat, and advising the jury that an aggressor is not justified in killing another unless he has endeavored in good faith to decline further struggle or combat. One of them directed a verdict of guilty if the jury found the defendants were aggressors and never at any time declined further combat. Another directed a verdict if the jury found that the defendants killed Bokor with malice aforethought and were the aggressors and did not in good faith endeavor to decline any further struggle before the killing was done. The court also gave an instruction that a man's house is his castle, and he may defend it even to the taking of life if necessary or apparently necessary to prevent persons from forcibly entering it against his will and when warned not to enter and to desist from the use of force. It directed a verdict of guilty if the jury believed from the evidence, beyond a reasonable doubt, that the defendants entered the home of the deceased unlawfully and against his will and while therein became violent toward him and it was necessary for the deceased to use force to expel them, whereupon the defendants shot and killed the deceased not in self-defense. The supposed habitation was a place of business where the public were invited and served although Bokor and the woman lived there. Whether it was such a place as can be defended against intrusion as a private habitation or not, the instruction did not apply to the evidence because there was no forcible entry or warning not to enter. The general statement that a man's house is his castle does not mean that a householder may kill another merely because he is in the house and there is no intention manifested to commit a felony or any element of danger to any occupant. Section 148 of division I of the Criminal Code

defines the law of this State respecting the defense of habitation as follows: "Justifiable homicide is the killing of a human being in necessary self-defense, or in the defense of habitation, property or person, against one who manifestly intends or endeavors by violence or surprise to commit a known felony, such as murder, rape, robbery, burglary and the like, upon either person or property, or against any person or persons who manifestly intend and endeavor, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein. A bare fear of any of these offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." (*Hayner* v. *People,* 213 Ill. 142.) Most of the instructions had no relation to the case or the issue, and especially the series of instructions stating that the defendants were not entitled to acquittal under their plea of self-defense unless they endeavored in good faith to decline further struggle or combat, since neither struggle nor combat had taken place. *Flynn* v. *People,* 222 Ill. 303.

The brief of the Attorney General is necessarily a confession of errors committed in the course of the trial, but his argument is that they are not ground for reversal because a jury could not have come to any other conclusion than that the plaintiff in error was guilty of criminal homicide, and inasmuch as the plaintiff in error was indicted for murder and most of the objectionable instructions related to murder and he was only convicted of manslaughter he was not prejudiced thereby. The court is asked to apply the rule of *Johnson* v. *People,* 202 Ill. 53, *People* v. *Michael,* 280 id. 11, *People* v. *Lloyd,* 304 id. 23, and *People* v. *Heard,* 305 id. 319. Where a verdict is in accordance with all the

evidence and the jury could not have found otherwise, errors which could not have reasonably affected the verdict will not call for reversal, but it cannot be said in this case that the jury could have reached no other conclusion.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*