HENRY JACKSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 2, 1888.*

1. CRIMINAL LAW—*obtaining money by false pretenses—in what a false pretense may consist—as, on the sale of property.* A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made, to part with something of value. It may relate to quality, quantity, the nature or other incident of the article offered for sale, whereby the purchaser, relying on such false representation, is defrauded.

2. It is true, that in a negotiation for the sale of property, statements may be a mere commendation or expression of opinion, by which the seller seeks to enhance the price of the property, and justifiable; but when such statements are made and intended as an assertion of a fact material to the negotiation, as a basis on which the sale is to be made,

if they be false, and are so known to the seller, the latter will be guilty of the offense, if he thereby induces the buyer to part with his property.

3. Same—*making a warranty to purchaser as to matters embraced in false representation.* An indictment will lie against the vendor of a horse who effects a sale and obtains the purchase price thereof by false representations as to the soundness, quality and habits of the animal, knowing their falsity, notwithstanding he may give the purchaser a written warranty embracing the matter so fraudulently represented.

4. Where a person effects a sale by false representations as to the quality of the thing sold, and gives a bill of sale warranting the property, stating that the payment is made in consideration of the warranty alone, and not upon any verbal or other representations, the People, upon an indictment against the vendor for obtaining money upon false pretenses, will not be precluded from showing the true state of the facts, and the consideration upon which the money was in fact paid.

5. Same—*presumption as to knowledge that representations were false.* A person who publicly advertises a horse for sale, representing the animal as possessing certain qualitie's, when such representation is false, will be presumed, unless the contrary is shown, to speak from knowledge of the character and qualities of the animal.

6. Same—*evidence—advertisement of property for sale, containing false representations.* Where the sale of a horse is effected by means of an advertisement in a newspaper, and the vendor states to the purchaser substantially the same thing as that contained in the advertisement as to the qualities of the animal, the advertisement is properly admitted in evidence, on an indictment against the vendor for obtaining money on the sale upon false and fraudulent representations as to the qualities of the same, without direct proof that the defendant procured the publication of such notice.

7. Same—*evidence—other cases of fraud by the same party—whether admissible.* On the trial of one on an indictment for obtaining money on false pretenses in the sale of a horse, evidence tending to show that the defendant was in the habit of making false representations or resorting to fraudulent practices in the sale of other horses, is clearly inadmissible. But testimony tending to show that the defendant, by his long continuance in the business of handling and selling horses, knew the horse sold was not of the character or in the condition represented by him, is competent.

8. Error will not always reverse—*admitting incompetent evidence.* In cases where the proof clearly justifies the finding, and it must have been the same had not certain incompetent evidence been admitted, the error in its admission will be no ground for a reversal.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Plaintiff in error was indicted in the Criminal Court of Cook county for obtaining money under false pretenses.   In the indictment he was charged with having, knowingly, designedly and falsely, pretended to one John Hines that a certain horse which he proposed to sell, and did sell, to said John Hines, for the sum of $110, was a healthy horse, perfectly sound in all parts of its body, without bad habits or tricks, was a good traveler, capable of trotting one mile in three minutes, and a good horse to be used in a buggy or wagon; whereas, on the contrary, said horse was unhealthy and diseased, and not perfectly sound in all parts of its body; and whereas, said horse was lame, balky, foundered and unsound; and whereas, said horse was not without bad habits, but was tricky and of bad habits; and whereas, said horse was not a good traveler; and whereas, said horse was not a good horse to be used in a buggy or wagon, or of the value of $110, but, on the contrary, said horse was utterly unfit to be used in a buggy or wagon or other vehicle whatsoever, and was wholly worthless and of no value whatever,—all of which the defendant well knew, etc. A jury was waived, and trial had by the court, resulting in a finding of guilty, and sentence under the statute.   On writ of error from the Appellate Court, a judgment of affirmance was there rendered, and the defendant prosecutes this writ of error from this court.

Messrs. FORREST & MAY, for the plaintiff in error:

There can be no adequate false pretense without a fraudulent representation of some past or existing thing, as distinguished from opinion.   2 Bishop on Crim. Law, (6th ed.) 415, 428; *State* v. *Stanley,* 64 Me. 157; *Commonwealth* v. *Jackson,* 132 Mass. 16; *State* v. *Mills,* 17 Me. 211.

When there is a sale with warranty, if the vendee relies on the warranty the case is not within the statute.    *Rex* v. *Coddington*, 1 C. & T. 161.

The court erred in admitting in evidence the advertisement of the horse, without proof that Jackson was the advertiser. It was also in conflict with the rule prohibiting evidence of other frauds.    *Commonwealth* v. *Jackson*, 132 Mass. 16 ; *State* v. *LePage*, 56 N. H. 245 ; *Strong* v. *State*, 86 Ind. 208 ; *Regina* v. *Holt*, Bell's C. C. 280.

Mr. GEORGE HUNT, Attorney General, for the People :

A false pretense may relate to quality, quantity, nature or other incident of the article offered for sale, whereby the purchaser relying on such false representation is defrauded.    *State* v. *Stanley*, 64 Me. 157 ; *Regina* v. *Abbott*, 61 E. C. L. 629 ; *People* v. *Crissie*, 4 Denio, 525 ; *Regina* v. *Kenrick*, 52 R. 49 ; *Commonwealth* v. *Jackson*, 132 Mass. 16 ; 2 Bishop on Crim. Law, 415, 447.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is an indictment, under section 96 of the Criminal Code, for obtaining money under false pretenses. The offense charged is, that the defendant, knowingly and falsely, pretended to one Hines that a horse defendant was proposing sell to Hines was healthy, perfectly sound, free from bad habits or tricks, was a good traveler, and a good horse to be used in a buggy or wagon. The errors assigned are, that the verdict is not supported by the evidence, that improper evidence was admitted on behalf of the People, and that the court refused to hold as law applicable to the case, certain propositions submitted in writing.

It is objected that the court erred in admitting, against the objection of the defendant, parol evidence of representations made by the defendant to Hines at the time of the sale of the horse, for the reason that certain instruments in writing were executed by the respective parties, as follows :

"CHICAGO, *June 22, 1885.*

"I, Henry Jackson, sell and deliver to Mr. J. Hines one sorrel horse. I warrant free from all incumbrance. He is seven years old, has good eyes, good wind, kind to handle in and out of the stable, and I warrant he will trot a mile in three minutes; and I promise that if the said horse don't come up to the above warranty, at the expiration of twenty days I will take him back and refund the money, providing he is returned in the same condition as when delivered. And I, Mr. J. Hines, in consideration of this warranty alone, and not upon any verbal or other representations, pay to Henry Jackson the sum of $110.

"Received payment in full.            HENRY JACKSON."

"CHICAGO, *June 22, 1885.*

"I, Mr. J. Hines, bought from Henry Jackson one sorrel horse, which he warrants free from all incumbrance. He is seven years old, has good eyes, good wind, kind to handle in and out of the stable, and he warrants he will trot a mile in three minutes; and he promises if said horse don't come up to the said warranty, at the expiration of twenty days he will take him back and refund the money, providing he is returned in the same condition as when delivered. And I, Mr. J. Hines, in consideration of this warranty alone, and not upon any verbal or other representations, pay to Henry Jackson the sum of $110.            Mr. J. HINES."

It appears from the uncontradicted evidence of Hines, that the representations alleged, and which were permitted to be proved, were made, and the sale completed, including the payment of the money by Hines, and the receipt of it by the defendant, before the signing and delivery of said instrument. He testifies, that after the contract had been completed, including the payment of the money, the defendant produced the instruments before set out, and asked the witness to sign the latter one of them, which he did. It is not shown that any

fraud was used to induce the execution of said instrument by Hines; but it is evident that while Hines signed the paper prepared and produced by defendant, he was induced to make the contract of purchase relying upon the representations previously made by the defendant. He had told the defendant that he knew nothing about horses, and must rely upon his (defendant's) word as to the character and value of the horse. The witness asked defendant if he had a buggy with which the horse could be tried, to which defendant replied, that the buggy had been sold separately, when the witness again said to the defendant, "I will have to take you at your word." The particular contention, however, is, that the previous negotiations were merged in the writing, and parol evidence thereof was therefore inadmissible; and it is also said, that the representations in the writing are warranties, and that a criminal prosecution can not be predicated on a warranty.

As before stated, the trade had been made and the money obtained from Hines upon the alleged fraudulent representation of the defendant, before the writings were produced by him. This is not a civil suit upon a contract, nor is the prosecution based upon the written warranty, but upon the fraud alleged to have been committed in obtaining the consent of Hines to part with his money, and neither rule contended for can therefore have any application to this case. It is needless to say, that even if Hines had understood the last clause of the instrument signed by him,—that is, that in consideration of the warranty alone, and not upon any verbal or other representation, he paid to the defendant the money,—the People would not be precluded from showing the true state of facts, and the consideration upon which the money was in fact paid. No statement or declaration of Hines, made after parting with his money upon the fraudulent representations of the defendant, would change the character of the transaction. The offense charged consisted in the fraud practiced by the defendant, in knowingly and falsely representing and pretending that

to be true which was not true, and by reason of which false and fraudulent pretenses Hines was induced to part with his money. If the rules contended for are to be applied in such case, every person selling property, and obtaining money therefor by false pretenses, can escape the penalty provided by law by simply inducing the purchaser to accept a bill of sale in which some warranty may be inserted, and thus, by a show of fairness, be enabled the more effectually to perpetrate the fraud. The instrument prepared for execution beforehand, as was here done, might contain, in the form of warranty, the very representations relied upon by the purchaser; and if the acceptance of such instrument would absolve the defendant from criminal responsibility for pretenses before then made, he would be enabled, by changing the form, but not the substance, of his representations, to more effectually carry out his fraudulent purposes. Careful as the law is of the rights of persons, we can not lend our sanction to the application of the rules where it would be attended with such consequences.

It is further insisted, that even if it be clear that the representations were untrue, the evidence does not show that defendant knew them to be so. The evidence does show clearly that the defendant was, and had been for years, a dealer in horses in the city of Chicago; that he had carried on business at many places in the city,—generally, perhaps, in stables in the rear of private residences,—and that he made known his business through advertisements in newspapers. In respect of the sale of this horse, it is shown that Hines was led to the stable in the rear of the residence 3127 State street, which was kept by the defendant, by the following advertisement, which appeared in the "Chicago Evening News" of Saturday, June 20, 1885:

"*For sale at a bargain*—Real nice sorrel driving horse. He is six years old, very stylish and handsome. I will guarantee him to trot a mile in three minutes. He is the property of a lady. The only reason I am offering him for sale is, I am

about to leave for Europe. The price is of no consequence as long as he gets a good home. Apply at the residence, 3127 State street."

Hines, on the 22d of June, went to the place indicated in the advertisement, found the defendant there, who said to the witness, "Do you want to buy a horse?" The witness replied, "Yes; I know nothing about a horse, but if you will promise that he is a good horse, I would like to buy him." The defendant said: "The horse cost $350, but I will sell him for .$150. He belonged to a sister of mine, and her husband died, and she is going to Europe, and you are no horse jockey, and that is the reason I will let you have it." After the trade had been completed and the horse was led out, the defendant said, "He's kind of skittish; you want to be careful of him." The third day after the sale, and after Hines had twice visited the defendant's place, without, however, finding him in, Hines met the defendant at a feed store, and said, "I don't want that horse; he won't pull." To which the defendant responded, "You try that horse again; that horse will work; he's a good horse; he has been in the stable; he will do everything; he has been in the stable; my sister did not drive him out; he has been in the stable a few days, and that is the reason he is so skittish." As part of the same conversation, the defendant asked, "What did you try him in?" and on being told, in a buggy and express wagon, used this language: "That is singular; he always worked for me." This evidence was received, over the objection of the defendant. It was clearly competent, as tending to show the defendant knew the condition and character of the horse. If he had worked the horse, the defendant must have known he was afflicted with the heaves, was foundered and balky. The evidence satisfies us that a horse afflicted with the heaves, and foundered, and that is balky, to the extent this horse is clearly shown to have been, would so manifest such infirmity as not to escape the attention of an experienced dealer in horses, who was handling and working him; and,

moreover, a man who publicly advertises a horse as "a real nice * * * driving horse," will be presumed, unless the contrary is shown, to speak from knowledge of the character and qualities of the horse. So, also, a like knowledge was legitimately inferable from the repeated statements of the defendant,—such as, "You try that horse again; that horse will work; he is a good horse; he will do everything." It is to be observed that none of these representations were in any way guarded, as being upon information. There can be no doubt that the defendant well knew that the representations he made to Hines, and upon which, alone, Hines was induced to part with his money, were false, in fact. The real condition of the horse was, that he had the heaves and was badly foundered; that he was not a good traveler, was balky, and would not work at all in a buggy or wagon, and was worth not exceeding $15.

It is said, however, that the evidence in respect of the insertion of advertisements in the paper was improperly admitted, it not being shown that the defendant actually procured their insertion. Evidence of the particular advertisement leading to the sale of this horse was clearly competent. It was shown to have led Hines to call at the place designated in the advertisement, where he found the defendant with the sorrel horse mentioned, and at the defendant's place of business. There, substantially the same things contained in the advertisement were told in respect of · the horse, except that the widowed sister of defendant was about to sail for Europe, instead of the defendant himself. It is manifest that the question of whether the defendant procured the insertion of the advertisement, was one of fact, and could be proved by direct evidence or by circumstances raising that presumption. Tending also to show the knowledge of defendant of the condition of the horse, it is clearly shown that at the time of the trade the horse appeared in good flesh, but the next morning was gaunt, and drawn up, and very thin. Other circumstances are shown, tending

at least to raise a strong presumption that the horse had been "doctored."

It is next insisted, that Hines neither returned the horse nor offered to return him before causing the defendant's arrest. This, if material, is not correct in fact. The sale was made in the afternoon. The next morning Hines led the horse back to defendant's place, to return him, but defendant was not there. The next day Hines again called, but failed to find him, and on the third day, Hines and Flannigan went together, and seeing the defendant, followed him to a feed store, when Hines told defendant, "I don't want the horse; he wont pull. If you take back the horse I will allow you $10 of my money; the horse is no good to me." And Flannigan also told him the horse would not work, and was foundered. The defendant then made the response before mentioned,—to try the horse again; that he would work; that he was a good horse; that he was good every place. Hines insisted it was no use for him to try. The next day Hines and Flannigan took the horse to the defendant's place, but could not find him.

It is objected that evidence was improperly admitted tending to show the kind of business in which the defendant was engaged, and his manner of conducting it. The evidence alluded to showed that defendant was in the habit of renting stables in the rear of some first-class house, and advertising horses to sell in the rear, with the directions to inquire of the groom at such number; that the horses advertised were the property of an uncle that had died, or of a lady whose husband had died, who wanted to go to Europe, or that his barn had burned, and that he therefore must sell; and also that the defendant dealt in wind-broken, heavey, crooked and balky horses. The latter evidence, in respect of the kind of horses in which defendant dealt, could not have been objectionable, for the reason that the same witness testified that he dealt in all kinds of horses. So far as the testimony tended to show other offenses, or separate and distinct sales and transactions,

it was improper; or, as tending to show that Jackson was in the habit of making false representations, or resorting to fraudulent practices, in the sale of horses, was clearly inadmissible. Such other statements, representations or acts at other times, or as respects other horses, might have been false, without affecting the particular transaction for which the defendant was indicted. (*Commonwealth* v. *Jackson*, 132 Mass. 19.) In so far, however, as any of this testimony tended to show that the defendant, by reason of his long business in handling horses, knew this particular horse was not of the character nor in the condition he represented him, it would be competent. But in no event could the defendant have been unduly prejudiced by the admission of this testimony. The competent proof was clearly sufficient to warrant the finding of the court, irrespective of the evidence complained of. In cases where the proof clearly justifies the finding, and it must have been the same had the incompetent evidence not been admitted, the error in its admission will be no ground authorizing a reversal.

"A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made, to part with something of value." (2 Bishop on Crim. Law, 415.) The representations here made were not matters of opinion, but of fact. A false pretense may relate to quality, quantity, the nature, or other incident of the article offered for sale, whereby the purchaser, relying on such false representation, is defrauded. It is undoubtedly true that in a negotiation for a sale of property, a statement may be a mere commendation or expression of opinion, by which the seller seeks to enhance the price of the property, and justifiable; but when it is made and intended as an assertion of a fact material to the negotiation, as a basis on which the sale is to be made, if it be false, and is known to the seller to be so, the seller is guilty of the offense, if he thereby induces the buyer to part with his property. Here, the fact as to whether the horse was healthy,

whether he was good to work in every way, and a good traveler, were material questions of fact asserted by the defendant and known by him to be false, and upon which he induced Hines to part with his money. The health and disposition of the animal in the condition represented by the defendant, existed or they did not exist, as a matter of fact. It is apparent that the purchaser was unacquainted with horses and their diseases, and in fact relied upon the assertion and statements of the defendant as to the character, health and capability of the animal.

We think the offense here charged was clearly established, and finding no error for which the judgment should be reversed, it will be affirmed.

*Judgment affirmed.*

Mr. Justice Bailey having heard this case in the Appellate Court, took no part in this decision.