## STATE v. CLUFF.

No. 2826.    Decided June 29, 1916.    (158 Pac. 701.)

1. JURY—COMPETENCY OF JURORS—IMPLIED BIAS. A juror is not disqualified to try a prosecution for adultery because his daughter is married to a brother of the female with whom it is charged the adulterous act was committed, since such relationship does not imply bias under Comp. Laws 1907, Section 4834, providing that juror's relationship by consanguinity or affinity within the fourth degree to the person alleged to be injured by the offense charged, or on whose complaint the prosecution shall have been instituted, or to the defendant, is cause for challenge for implied bias. (Page 104.)

2. CRIMINAL LAW—APPEAL AND ERROR—IMPANELING JURY—ERROR IN OVERRULING CHALLENGE FOR CAUSE—HARMLESS ERROR. Where it is not shown that accused exhausted his peremptory challenges before the impaneling of the jury was completed, error in overruling a challenge for cause is not prejudicial. (Page 104.)

Appeal from Fifth District.

3.	JURY—VENIRE—DEFICIENCY—MANNER OF SUPPLYING.	Under
Comp. Laws 1907, Section 1312, where the venire of jurors for
the term has been exhausted and additional names are drawn
from the box, the names of jurors not readily accessible because
residing at a distance may properly be laid aside and other
names drawn. (Page 105.)

4.	WITNESSES—CORROBORATION—BIRTH OF CHILD. In a prosecution
for adultery, the testimony of the female with whom the adul-
terous acts are alleged to have been committed, identifying
her child in court, is competent to corroborate her testimony
that she gave birth to a child. (Page 105.)

5.	CRIMINAL LAW—EVIDENCE—WRITTEN ADMISSIONS OF ACCUSED.
Written admissions of defendant in a prosecution for adultery
*held* sufficiently identified, where the female implicated testi-
fied to an extended correspondence, that she was familiar with
handwriting of accused, and that the letters were written by
him to her in the course of such correspondence and received
in due course of the mail. (Page 105.)

6.	WITNESSES—DEFENDANT'S REPUTATION FOR CHASTITY—CROSS-
EXAMINATION. In a prosecution for adultery, evidence on cross-
examination of defendant's brother-in-law, who had testified that
reputation of accused for chastity was good, that defendant's
first child was born seven months after his marriage is inad-
missible to show defendant's want of chastity. (Page 105.)

7.	CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT OF COUNSEL. In a
prosecution for adultery, argument of counsel that "wife of de-
fendant gave birth to a child in seven months after lawful wed-
lock," based on improper cross-examination, *held* improper.
(Page 105.)

8.	CRIMINAL LAW—HARMLESS ERROR—ERROR NOT RESULTING IN
"MISCARRIAGE OF JUSTICE." Under Laws 1915, c. 113, providing
that a judgment shall not be reversed for error which has not
resulted in a miscarriage of justice, *held* the words "miscar-
riage of justice" mean no more than that the substantial rights
of a party have been prejudiced, which, under Comp. Laws 1907,
Section 4975, was the former test of prejudicial error. (Page
106.)

9.	CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT OF COUNSEL. Laws
1915, c. 113, providing that a judgment shall not be reversed
for error not resulting in a miscarriage of justice, and that
error shall not be presumed to have so resulted, but the court
must be satisfied that it has that effect before reversing, *held*
not to abolish the presumption that error depriving the accused
of substantial rights is prejudicial. (Page 109.)

10. CRIMINAL LAW—TRIAL—IMPROPER ARGUMENT OF COUNSEL—
HARMLESS ERROR—ERROR NOT RESULTING IN "MISCARRIAGE OF
JUSTICE." Improper cross-examination and argument in a pros-
ecution for adultery, whereby defendant's reputation for chas-
tity was impeached by showing that his first child was born
seven months after his marriage, *held* not prejudicial error,
requiring reversal in view of the evidence of defendant's guilt.
(Page 110.)

Appeal from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Jesse M. Cluff was convicted of adultery, and he appeals.

AFFIRMED.

*O. A. Murdock* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen., for the State.

STRAUP, C. J.

The defendant was convicted of adultery, and appeals. By statute (Comp. Laws 1907, Sec. 4834) a juror's relation by "consanguinity or affinity within the fourth degree to the person alleged to be injured by the offense **1, 2** charged, or on whose complaint the prosecution shall have been instituted, or to the defendant," is cause of challenge for implied bias. A juror was called whose daughter was married to a brother of the female with whom it was charged the adulterous act was committed. The defendant's challenge of the juror for implied bias was overruled. Complaint is made of the ruling. The shown relationship is not within the statute. *Tegarden* v. *Phillips,* 14 Ind. App. 27, 42 N. E. 549; *Id.,* 39 N. E. 212; *Louisville & Nashville R. R. Co.* v. *Holland,* 173 Ala. 675, 55 South. 1001; 2 C. J. 377. Further, the juror was subsequently excused on the defendant's peremptory challenge. When the impaneling of the jury was completed, it was not shown that the defendant had exhausted all of his peremptory challenges. So for that reason also, may the defendant not be heard to complain.

The venire of jurors summoned for the term was exhausted.

Thereupon the court directed additional names to be drawn from the box. As names of jurors not readily accessible because residing in distant parts of the county were drawn, they were laid aside, and other names of persons drawn who were accessible. Complaint is made of that. The ruling is justified under Comp. Laws 1907, Sec. 1312.

The female, an unmarried woman, and a witness for the State, testified to the alleged acts of adultery, and that as the result thereof, she gave birth to a child. After testifying to that several times the State asked her, and she answered:

"Q. You said you gave birth to a child. I will ask you if this is your child? A. Yes, sir. Q. The one you refer to in your testimony? A. Yes, sir."

"Counsel for Defendant: Now, if the court please, the defendant, at this time, desires to take an exception to the conduct of counsel in presenting the baby in court."

Complaint now is made of this. But neither any objection nor ruling was made. Counsel merely "excepted to the conduct" of the district attorney. It is not made to appear that the child was exhibited or referred to to show a resemblance between it and the defendant, but merely to corroborate the testimony of the witness that she gave birth to a child. The testimony was at least competent for that.

A number of letters containing admissions against interest, claimed to have been written by the defendant to the female, were, over his objections, received in evidence. Complaint is made of that on the ground that the letters were not sufficiently identified as his letters. She testified to a somewhat extended correspondence between the defendant and herself; that she saw him write on several occasions; that she was acquainted with his handwriting, and that she was able to tell it when she saw it; and that the letters produced were written by him to her in the course of the correspondence, and were received by her in due course of mail. There is nothing to this objection.

The defendant's brother-in-law was called, and testified that the defendant's reputation for chastity was

good. The district. attorney, on cross-examination, asked the witness:

"Q. You are a brother-in-law of the defendant? A. Yes, sir. Q. Can you tell this jury when his first child was born?

On objections being made to this as not cross-examination and as incompetent and irrelevant, the district attorney stated:

"He knows all about this man. Why didn't you bring that out in direct anyway?

"The Court: I think he may answer..

"The Witness: Why I don't know that I can, the date.

"District Attorney: Q. Can you approximate the date? A. I don't know that I could state a certain month. I didn't keep track of any particular dates or anything. Q. Can you tell how long he was married when his first child was born?"

Here the objections were renewed and overruled. The witness answered:

"Why, I don't know as I could to the certain month; I think it was along about 7 months.

"District Attorney: That is all."

Complaint is made of this, and also of the argument of the district attorney to the jury "that the wife of the defendant gave birth to a child in seven months after lawful wedlock." We think the objections to the question and to the argument ought to have been sustained. The inquiry was not proper cross-examination. It in no way tended to explain, modify, or contradict the testimony in chief of the witness, and touched upon a subject which was wholly irrelevant to the issue, or the credibility of the witness, or the weight of his testimony. The further question is as to the prejudicial effect of the rulings. It certainly would be a reproach upon the law if this defendant was convicted of the charged offense because his wife gave birth to a child within seven months after wedlock, or if the verdict was induced or influenced thereby. It is argued by the State that the rulings had no prejudicial effect because it is common knowledge that matured children have been born within seven months after conception. But it is very evident that the prosecution elicited this testimony to show, and in effect argued to the

jury, that the defendant's first child was conceived before lawful wedlock, and thus sought to reflect on the morals and chastity of the defendant. No other purpose can be attributed to it. Prior to the laws of 1915 we had a statute (C. L. 1907, Sec. 4975) relating to criminal procedure, which provided that:

"After hearing an appeal, the court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties."

Under it, and in harmony with the rule elsewhere, judgments in this jurisdiction have not been reversed for mere error, but only for prejudicial error, error which did "affect the substantial rights of the parties." Here, as elsewhere, an erroneous ruling made against a litigant, which was calculated, or tended, to do harm and to affect a substantial right was presumed to have done so until on the record it was demonstrated that no such harm was or could have been done. This statute, by Laws of 1915, c. 113, was amended to read thus:

"After hearing an appeal the court must give judgment without regard to errors or defects which have not resulted in a miscarriage of justice. If error has been committed it shall not be presumed to have resulted in a miscarriage of justice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment."

The phrase in the old statute, which did not affect a substantial right, has a well-defined meaning well understood alike by bench and bar. The substitution in place of it, "which has not resulted in a miscarriage of justice," tends but to create an uncertainty where theretofore none existed. The term, "miscarriage," has, in law, a well-defined meaning as used in statutes synonymously with abortion and as used in the statute of frauds associated with "debt or default" of another. In philology it also has the further meaning of failure of purpose or result. But the phrase, "miscarriage of justice," has no defined meaning in law. It has a somewhat flexible meaning in ordinary speech, yet even there more in a colloquial sense and somewhat akin to a simile that something was done or omitted which "untimely ripped" justice "from

its mother's womb,'' or a hyperbole, that monstrosity, instead of justice, something unnatural instead of natural, was delivered or rendered. While we all, when a little noisy, at times speak of a ruling or a decision not to our liking or purpose as ''a miscarriage of justice,'' yet do so in obvious exaggeration, not intended to be taken literally, or use such phrase in the sense that, though the cold law may have been applied and the prescribed procedure followed, yet in truth right and justice did not prevail, but miscarried; as that the court or jury in determining an issue, within their province believed one witness as against another, and thus, that the real fact in controversy was not found truly or accurately. Thus one, professing knowledge of another's guilt, who though regularly tried was acquitted, is apt to say there was a miscarriage of justice, or, professing knowledge of his innocence, will say the same thing if he was convicted. Permissible as such phrase may be in ordinary speech, yet, it is not apt language for a lawmaker who is presumed not to speak in similes, hyperboles, or colloquials. The Legislature might about as well have declared that, no matter what the error or defect may be, the judgment, nevertheless, must be affirmed, unless the court is satisfied that the appellant did not have a ''square deal.'' It is evident the Legislature attempted to describe something by language inapt for the purpose. The duty, however, is imposed on us to ascertain from the language thus employed the legislative intent, and to give effect to it. The phrase, ''which have not resulted in a miscarriage of justice,'' as used in the statute and in connection with the subject to which it relates, can mean no more than the phrase in the old statute, ''which does not affect the substantial rights.'' A ruling which injuriously affects a substantial right may, in exaggerated speech, be said to result in a miscarriage of justice. True, the term ''miscarriage of justice'' is more vociferous and expletive than that of ''substantial rights''; but, as used in the statute and when considered in connection with the subject to which it relates, what enlarged or different meaning can be given it? If it be said that the Legislature, by substituting the one phrase for the other, intended some other and different meaning, then is it difficult to perceive, with

any degree of certainty, what that meaning is. If an error or defect affecting a substantial right shall be regarded as not resulting in a miscarriage of justice, and hence is to be disregarded, then what greater or other error, or defect, may be regarded? So unless a meaning be given this language similar and equivalent to that of the old statute, no pertinent meaning, with any degree of certainty, can be given it.

We thus come to the further provision:

"If error has been committed it shall not be presumed to have resulted in a miscrriage of justice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment."

We think this but an admonition that all errors, or defects, shall not be presumed prejudicial, to have affected a substantial right, to have resulted in a miscarriage of justice and thus that harmful results are not to be presumed from, nor reversals granted for, mere error. In the language of the statute, the court, before it is warranted in reversing a judgment, "must be satisfied" that the committed error resulted in prejudice of some substantial right. But how satisfied? Not by a presumption from mere error, but by something showing such prejudicial effect. How may that be shown? Some committed errors, prima facie, are not calculated to do harm. Hence no presumption of harmful effect is to be indulged. Nevertheless, the party against whom such errors are made may, by the record, demonstrate, if he can, that the rulings did result to his prejudice of some substantial right. On the other hand, error may be committed which, prima facie, is calculated to do harm and to affect substantial rights. From such error prejudice and harmful effect of such rights will be presumed until, by the record, it is demonstrated that the error did not have, or could not have had, such prejudicial or harmful effect; and, if not so demonstrated, then ought the court to be satisfied that prejudice resulted. That is but drawing a just conclusion from a natural and unrebutted or undisputed inference. The Legislature did not say, nor use language to imply, that from no error, however strongly calculated to do harm, no harmful effect of any substantial right should be presumed or inferred. Surely the Legislature did not intend

that if a defendant, against his demand and protest, should be denied the right of trial by jury, or to give testimony in his own behalf, no harmful and prejudicial effects of substantial rights should be presumed, or that the error must be disregarded, if the court be satisfied on the record that the defendant was guilty, or that the evidence which the court alone heard, after excluding that of the defendant, clearly or indisputably showed his guilt. Such errors would be direct invasions of substantial rights, and from which, on conviction, prejudicial and harmful effects would be so conclusively presumed as to be incurable by any record of other proceedings. The statute, unless unavoidable, should not be construed to mean that the Legislature attempted to confer power on this court to try the case de novo on the record, and, regardless of errors or defects, to affirm the judgment if the court be satisfied that the right result was reached. Such a construction would render the act in conflict with the Constitution defining and prescribing our power in such particular. The construction which we have given the statute is, we think, reasonable, avoids the conflict, and reflects the legislative intent, though somewhat cloudily expressed.

With these observations we return to the adjudged error. A denial of a litigant's right of proper cross-examination may affect a substantial right. So, granting improper cross-examination to his adversary. Whether a denial or permission of cross-examination as to a particular matter is calculated to do harm is dependent upon a variety of things, chiefly the character of the matter sought or elicited and its bearing upon or relation to other evidence. When so considered, if it is of such character as is calculated to do harm, prejudice will be presumed. Whether the presumption is overthrown by the record is again dependent upon a variety of things, chiefly the issues, and the quantum and character of other evidence, and the natural and probable effects when considered with the whole of the evidence. Though prejudice should be presumed from the errors here committed, yet we, on the record, are satisfied that no harmful result of any substantial right was produced by them. That the charged adulterous act was committed by the defendant is shown by

good and undisputed evidence and by the defendant's own and undenied admissions. Upon this evidence we do not say that the defendant is guilty, or that he ought to have been convicted. It is not within our province to decide that or to determine his guilt or innocence. But because of the undisputed evidence, and the undenied admissions of the defendant, we are satisfied that the same result would have been reached by the jury had not the improper cross-examination and argument been permitted, and hence that the verdict was not influenced thereby. It may be asked, How do we know that? We know it by attributing to the jury the common sense and experience possessed by the average juror who, mindful of his duty as a juror and considering the evidence dispassionately, could not well have rendered a verdict of not guilty without disregarding the undisputed evidence and undenied admissions of the defendant as to his guilt. We, therefore, are of the opinion that the judgment of the court below should be affirmed. Such is the order.

McCARTY, J., concurs.

FRICK, J.

I concur. Undoubtedly the court erred in its ruling as pointed out by the Chief Justice. But to reverse the judgment for that reason alone would, in my judgment, merely result in reversing a judgment for an error which in no way affected a substantial right of the defendant.