## STATE v. COX

No. 4706.   Decided April 23, 1929.   (277 P. 972.)

*O. A. Murdock,* of Beaver, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. Eggertsen Cluff,* Asst. Atty. Gen., for the State.

CHERRY, C. J.

John Cox was convicted of burglary in the second degree, and appeals. The crime consisted of breaking into a granary in Beaver county, belonging to H. H. Ashworth, on the night of March 18, 1927, and stealing wheat therefrom. An accomplice, Dee Patterson, testified that he, together with the accused and one other, went to the granary at the time charged in an automobile belonging to Wm. Richards, entered the granary, and took the wheat and hauled it to town, four miles away, where it was loaded in a wagon, and on the next day sold to Lawrence White.

By other evidence it was proved that a considerable quantity of wheat disappeared from the granary on the night in question, and that on the following morning fresh automobile tracks were discovered leading to and from the granary. The tracks had peculiar marks, indicating the particular kind of tires of the rear wheels of the car which made them, and corresponded precisely with the rear tires upon an automobile belonging to Wm. Richards. Scattered grains of wheat were found on the ground near the granary where the automobile had evidently backed up and stopped. And a curtain rod identified as belonging to the Richards car was soon thereafter found on the road between the granary and town. It was proved that Wm. Richards had let the car to the accused on the night in question. Other evidence showed that the accused was connected with the sale and delivery of wheat to Lawrence White on the following day, and that a check given by Lawrence White for the wheat was made payable to the accused, and was thereafter indorsed by him. The accused offered no evidence whatever.

The principal contention of appellant is that the evidence is insufficient to sustain the verdict because the testimony of the accomplice was not "corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the com-

mission of the offense," as required by Compiled Laws Utah 1917, § 8992.

We have heretofore held that the test of sufficiency of corroborative evidence is that it need not be sufficient in itself to support a conviction, but it must implicate the accused in the offense, and not be consistent with his innocence, and must do more than cast a grave suspicion on the accused. *State* v. *Lay*, 38 Utah 143, 110, P. 987; *State* v. *Butterfield* (Utah) 261 P. 804. Subjected to this test, we think the corroboration in the present case was sufficient to answer the requirement of the statute, and that the verdict is supported by the evidence.

At the trial, and over the objections of the appellant, the state proved that one Yardley, who owned a farm adjoining Ashworth's, had missed wheat from his granary from time to time during January, February, and March, 1927. And it was proved that the appellant had made sales of wheat at several times during those months. Appellant complains of the admission of such evidence because he contends it related to independent offenses not connected with the crime charged. We are inclined to think the evidence was erroneously admitted, but, in view of the satisfactory and convincing evidence of the appellant's guilt, which stands wholly undisputed, the erroneous admission of the evidence does not call for a reversal of the judgment. Without the objectionable evidence, the verdict must have been the same. *Jackson* v. *People*, 126 Ill. 139, 18 N. E. 286; *People* v. *Wilkinson*, 30 Cal. App. 473, 158 P. 1067; *People* v. *Skrypczak*, 220 Mich. 222, 189 N. W. 854; *State* v. *Owens*, 124 S. C. 220, 117 S. E. 536; *Carpenter* v. *United States* (C. C. A.) 280 F. 598; *State* v. *Cluff*, 48 Utah 102, 158 P. 701; *State* v. *Nell*, 59 Utah 68, 202 P. 7; *State* v. *Woods*, 62 Utah 397, 220 P. 215; *State* v. *Hadley*, 65 Utah 109, 234 P. 940; *State* v. *Seyboldt*, 65 Utah 204, 236 P. 225.

During the trial the accused presented an affidavit that he was impecunious and unable to pay the per diem and

mileage of his witnesses, and that numerous named witnesses were material and important witnesses and their testimony material as a part of his defense, and asked for an order under Comp. Laws Utah 1917, § 2555, that the witnesses named be subpoenaed at the expense of the state. In the absence of the jury, the accused was cross-examined by the district attorney respecting his impecuniosity, and facts were discovered which warranted the court in denying the order upon the ground that the accused was not unable to pay the per diem and mileage of his witnesses. Besides, the affidavit failed to show the materiality of the testimony of the witnesses named, as required by the statute, in this, that no showing of what the witnesses would testify to was made, and no showing that his counsel had advised him that the evidence of such witnesses was material for defendant's defense. We perceive no error in the denial of the demand.

When Dee Patterson (the accomplice) was called as a witness on behalf of the state, the defendant's counsel objected to his testifying as a witness on the ground "that it would be against his wishes and be compulsory and against his interests." He asked the witness if he objected to testifying on the ground that it might tend to incriminate him, and the witness answered "Yes." The objections made were overruled. Thereafter specific questions were asked the witness concerning the commission of the crime charged against the accused, to which no objections were made and which were answered by the witness. Appellant's counsel says, "The court erred in compelling the witness, Dee Patterson, to testify over his objection and over the objection of the defendant, under the conditions and circumstances shown in the record." This contention has no merit. There is no case here of a witness being compelled to answer particular questions over his objections on the ground that such testimony would tend to incriminate him. The objection by the accused to the witness testifying at all, which was the substance of the

objection here, was not a valid objection, and was correctly overruled.

Error is also assigned for a comment upon the failure of the defendant to testify, arising during the argument by the district attorney to the jury, when defendant's counsel interrupted him by asking why he had not called to the witness stand Richard Cox, a codefendant of the accused. Whereupon the district attorney replied:

"Why didn't you put on John Cox?" Upon exception being taken to the remark of the district attorney, the court instructed the jury to pay no attention to the statement; that the defendant was not required to take the stand and testify; and that no conclusion should be drawn from the fact that he had not testified as a witness. Under such circumstances, the error, if any, is not ground for reversal. *People* v. *Higgins,* 9 Cal. App. 267, 98 P. 683.

Other errors are assigned but not argued. We have carefully examined and considered the whole record, and find no reason sufficient to justify a reversal of the judgment.

Judgment affirmed.

EPHRAIM HANSON AND FOLLAND, JJ., concur.

ELIAS HANSEN, J. (dissenting). I do not agree with the conclusion that the judgment in this case should be affirmed. The view is expressed in the prevailing opinion that the admission of evidence tending to connect the defendant with the commission of other crimes was not prejudicial, because of the satisfactory and convincing proof of defendant's guilt of the crime charged. It is a well-recognized general rule of law that evidence which may show, or tend to show, that the accused has committed a crime wholly independent of the crime charged, is inadmissible. Underhill, Crim. Ev. (2d Ed.) § 87, p. 154; *State* v. *Shockley,* 29 Utah 25, 80 P. 865, 110 Am. St. Rep. 639; *State* v. *Baum,* 47 Utah 7, 151 P. 518.

To the general rule there are exceptions.

"The exceptions to the general rule arise either from the necessity of the case, as, for example, where two or more crimes constituent [constitute] parts of one transaction so that to prove either necessitates proof of the other, or when the intent is to be proved from circumstances or in the third place where .the identity of the accused is expressly in issue, that is to say, where the evidence conclusively shows a crime was committed by some one but there is a sharp conflict as to the person who committed it." Underhill, Crim. Ev. (2d Ed.) § 87, p. 156.

In this case the purpose of admitting evidence tending to show that the defendant was connected with the commission of burglaries other than that charged is thus stated in the instructions to the jury:

"The court has permitted the State to introduce evidence of other acts of the defendant of a similar character to the crime alleged in the information for the purpose of showing guilty intent or the existence of a common scheme, plan or system, and such evidence is permitted to go to the jury for the purpose of showing knowledge or intent of the defendant to repel the inference of accident. Such evidence was permitted to be received for the purpose of showing motive and intent, and for no other purpose, and it can only be considered by you for that purpose; and it is for you to determine whether it in any manner tends to support such motive or intent, or whether the defendant ever did or did not have any such motive or intent. You may not draw any inference against the defendant by reason of this testimony, for any other purpose than the purpose stated, and then only such as in your judgment you believe it fairly entitled to."

It seems clear, that if the defendant broke into the granary of Ashworth, took wheat located therein, and sold the same without Ashworth's consent, as claimed by the state, the acts themselves established the motives and intent of the wrongdoer. That the breaking into Ashworth's granary and stealing his wheat located therein was not an accident is likewise self-evident. Nor does the evidence tending to show that the defendant committed other burglaries than the one charged come within any other exception to the general rule that in the trial for the commission of one

crime other independent crimes may not be shown. Apparently we are all agreed that it was error to admit evidence tending to show the defendant was connected with burglaries other than the burglary charged, we are not agreed as to the probable effect of the such evidence. In the case of *Jensen* v. *Utah Railway Co.*, 270 P. 349, recently decided by this court, the following rule at page 362 was stated to be the test in determining whether or not an error is prejudicial:

"Where the committed error is of such nature or character as calculated to do harm, or on its face as having the natural tendency to do so, prejudice will be presumed, until by the record it is affirmatively shown that the error was not or could not have been of harmful effect. Thus, if the appellant shows committed error of such nature or character, he, in the first instance, has made a prima facie showing of prejudice. * * * *State* v. *Cluff*, 48 Utah 102, 158 P. 701; *Jackson, Stone, et al.* v. *Feather River & Gibsonville Water Co.*, 14 Cal. 19; *Thelin* v. *Stewart*, 100 Cal. 372, 34 P. 861; 2 Hayne, New Trial and Appeal (2d Ed.) pp. 1608-1614."

That the improper admission of evidence which shows, or tends to show, that an accused has committed crimes other than the one charged, is calculated to do harm, is not open to serious doubt. Jurors are much more prone to believe that an accused is guilty of the commission of a charged crime if it is made to appear that he has committed, or probably committed, other crimes. Numerous cases might be cited where it is held that the improper admission of such evidence is prejudicial error. The cases of *State* v. *Shockley* and *State* v. *Baum*, supra, will serve to illustrate the rule in this jurisdiction. When it is once established that error is committed, these inquiries naturally present themselves: (1) How may the prima facie showing of prejudice in the improper admission of evidence to overcome? (2) Why should an error be held prejudicial in one case and a similar error be held nonprejudicial in another case? (3) Why should the improper admission of evidence showing, or tending to show, that the accused has committed crimes

other than the crime charged, work a reversal in one case and not in another? Evidently the answers to these inquiries must come from an examination of the record, and particularly a consideration of the kind and weight of the evidence adduced at the trial. Thus, when the evidence conclusively shows the accused guilty of the crime charged, the presumption of prejudice is overcome. *State* v. *Cluff*, 48 Utah 102, 158 P. 701; *State* v. *Wood*, 62 Utah 397, 220 P. 215. When the evidence is not convincing, the presumption of prejudice is not overcome. *State* v. *Baum*, supra; *State* v. *Horr*, 63 Utah 22, 221 P. 867. It thus becomes a matter of primary importance to determine whether the evidence properly received in this case is of such character as to overcome the presumption of the prejudicial effect of the improper admission of the evidence complained of.

In this case the state relied primarily upon the evidence of an accomplice for the conviction of the defendant. Without the testimony of the accomplice, it is reasonably clear that the evidence would not support a conviction. The accomplice, Dee Patterson, testified in substance that he resided at Beaver, was 22 years of age, was a laborer, and was acquainted with the defendant.

The following is quoted from the bill of exceptions, witness Patterson testifying in chief:

"Q. Did you and the defendant John Cox have any business dealings together? A. No, sir.

"Q. None at all? A. No, sir.

"Counsel for Defendant: Do you object to testifying, Mr. Patterson?

"The Witness: Yes, sir.

"Counsel for Defendant: On the ground that it might tend to incriminate you?

"The Witness: Yes.

"Counsel for Defendant: Under his constitutional rights I don't think any further examination should go on.

"The Court (addressing witness): The Court will direct you to testify. The charge against you has been dismissed for the purpose of making you a witness against your co-defendant, and you will answer the questions.

"Q. Calling your attention to about the 18th of March, Mr. Patterson, did you and John Cox at that time have any business dealings together? A. I do not think we had.

"Q. On the night of March 18, 1927, did you in connection with John Cox and Richard Cox break into the granary of Heber Ashworth on his farm down on Devil Creek?

"Counsel for Defendant: I object to the question on the ground that it is leading.

"Counsel for Prosecution: I believe that it is permissible. This witness is an unwilling witness for the State, a co-defendant, and I think it comes within the rule that makes it permissible, even though called by the State to ask leading questions, or even cross examine him.

"The Court: Where he appears to be an unwilling witness leading questions are permissible. Objection overruled.

"The Witness: Yes, sir."

The witness then related that he and the defendant went down to the Ashworth granary in an automobile; that the defendant drove the automobile; that they broke into the Ashworth granary and took some grain; that the grain was taken to Beaver in the automobile, and was unloaded from the automobile into a wagon; and that on the day following the grain was sold to Lawrence White, who paid for the grain by checks. The witness, Dee Patterson, was then cross-examined by counsel for the defendant.

The following is quoted from his cross-examination:

"Q. You are testifying under fear, are you, Patterson? A. Yes, sir.

"Q. And under compulsion? A. Yes, sir.

"Q. And under promises that have been extended to you by the State? A. Yes.

"Q. And you would not testify were it not for that? A. No, sir.

"Q. You still claim your constitutional right to refuse to testify do you? A. Yes, sir.

"Q. And you have given all this testimony under your constitutional right? A. Yes, sir.

"Q. You would not testify as you now testify if it were not for fear? A. No, sir."

The substance of the other evidence is set out in the prevailing opinion. The defendant did not testify, nor did he offer any evidence.

Upon the record, I am unable to accede to the view that the proof of the defendant's guilt is so convincing as to overcome the presumption of prejudice arising by reason of the improper admission of evidence tending to show that the defendant was connected with the commission of crimes other than that charged. Obviously, the fact that the defendant did not testify in his own behalf may not be regarded by us as any evidence tending to strengthen the state's case against the defendant. Constitution of Utah, art. 1, § 12; Compiled Laws Utah 1917, § 9279. The testimony of Dee Patterson is of such character that the jury might well have disbelieved the same. He participated in the crime charged, and his testimony as a matter of law is not entitled to the same credence as that of a witness who did not participate in the crime. At the beginning of his testimony, he, in effect, denied that he had been connected with the defendant in the commission of the crime. It was only after Patterson was informed by the presiding judge that the charge against him had been dismissed for the purpose of making him a witness against his codefendant and after he was asked a leading question by the prosecuting attorney that the state was able to secure the necessary evidence. If he is to be believed, his consent to testify was secured by promises of immunity from prosecution and his testimony was given through fear and compulsion. The jurors who tried this case could not justly be blamed if they refused to believe the testimony of such a witness under such circumstances. In the absence of Patterson's testimony, the defendant would have been entitled to a directed verdict of not guilty.

Moreover, before the defendant could be properly convicted, the jury must find as a fact that the testimony of Dee Patterson was corroborated by other evidence which, in itself, and without the aid of the testimony of Patterson, tended to connect the defendant with the commission of the offense charged. If the jury found as a fact that the evidence improperly received supplied the corroboration of

Patterson's testimony as required by the statute, obviously the admission of the evidence complained of was prejudicial. It is often difficult for jurists to determine whether or not, in a given case, the corroborative evidence is as a matter of law sufficient to meet the requirements of the statute. This case is not free from such difficulty. Jurors are doubtless confronted with a similar difficulty when required to determine as a fact whether or not the statutory requirement of corroboration has been satisfactorily established. Here evidence was improperly received tending to show that the defendant was connected with commission of other similar crimes. The court instructed the jury that it "has permitted the State to introduce evidence of other acts of the defendant of a similar character to the crime alleged in the information for the purpose of showing guilty intent or the existence of a scheme, plan or system," etc. Does the "evidence of the other acts of the defendant of a similar character to the crime charged in the information" justify the jury in reaching the conclusion that Patterson's testimony was thereby sufficiently corroborated to justify a verdict of guilty? The jury might well answer this question in the affirmative. If the jury based its finding that the testimony of Patterson was sufficiently corroborated to meet the statutory requirement upon the testimony erroneously admitted, obviously its admission was prejudicial. I am thus of the opinion that the judgment appealed from should be reversed, and a new trial granted.

STRAUP, J. (dissenting). I concur in the dissent. I think it clear that the evidence of the separate and independent burglary was inadmissible. It in no way was connected with the charged burglary. The reason for the rule and exceptions thereto are stated in *State* v. *Bowen,* 43 Utah 111, 134 P. 623, 8 R. C. L. 198-204. I think the ruling admitting the evidence also was prejudicial. It is claimed it was not because of the satisfactory, convincing, and undis-

puted other evidence of guilt upon which the verdict must have been the same had the objectionable evidence not been received. I do not concur in the conclusion that the other evidence was of such character, or that the verdict necessarily would have been the same. The direct evidence—the entering and taking—of the charged offense alleged to have been committed by the accused rests on the testimony of the accomplice. The evidence independently of the accomplice to connect the accused with the commission of the offense is more or less of circumstantial character, while sufficient in point of law to do so, yet not so cogent that it can be said reasonable minds may not differ as to the ultimate fact to be deduced therefrom beyond a reasonable doubt. The law itself does not attach the legal probative value to testimony of an accomplice as it ordinarily does to testimony of other witnesses. It is for that reason that the statute does not permit a conviction on the uncorroborated testimony of an accomplice. Shown to be an accomplice, the witness, in giving his testimony, carries with him, if not a certain degree of more or less incredibility, at least a closer scrutiny and caution of his testimony than ordinarily is given testimony of other witnesses. I cannot say that the testimony of the accomplice and the circumstantial evidence independently thereof to connect the accused with the commission of the offense, though undisputed, were so clear, so satisfactory, and so convincing, either in point of law or of fact, as to require a verdict only of guilt and that reasonable minds could not well differ as to a reasonable doubt of the accused's guilt. To the laity, the admission of evidence of a separate and independent offense similar to that charged is to induce a belief that, since the accused committed or was connected with such other offense, it is probable he committed the charged offense. However much it may be disclaimed, such on the record was the real purpose to so influence the jury by the objectionable evidence. The state cannot complain if it be held that the evidence had such desired and intended effect.

■

It is a species of evidence fraught with danger and harm against which even members of the profession, let alone the laity, sometimes struggle not to be influenced thereby and not to give the weight to the admissible evidence that otherwise would not be given it were it not for the objectionable evidence. Whatever disfavor or caution with which the jury may have viewed the testimony of the accomplice may have been overcome by the objectionable evidence, and whatever doubt the jury on the admissible evidence might have had as to the accused's guilt may have been entirely overcome by the objectionable evidence. And then the evidence independently of the testimony of the accomplice to connect the accused with the commission of the offense is not strong. It even is open to some debate as to its sufficiency for such purpose. There also is some uncertainty in the evidence as to whether the evening or night the car was loaned to the accused was the same night that the burglary as claimed by the state was committed. The person who loaned the car testified it was kept by him in an open garage where any one had access to it; that it was on a Monday evening he loaned the car to the accused, and only on that occasion; that he saw the accused shortly thereafter, who told him he let others have the car to go to a dance; and that he saw the car in the garage the next morning, while the state claimed and gave evidence to show that the burglary was committed on a different night.

So, when is considered the character of the evidence, the direct evidence of the accused's entry, and taking coming from the mouth of a self-confessed thief, and the evidence independently of the testimony of the accomplice to connect the accused with the commission of the crime, while sufficient but not strong to connect him with it, I, on the record, am not prepared to say the objectionable evidence did not influence or could not have influenced the verdict. And that, and as shown by Mr. Justice HANSEN, is what we are required to say to affirm this judgment. I think the cases cited in the prevailing opinion as to nonprejudice

deal with a state of facts dissimilar from those in this case. I think the case falls within the well-recognized rule that the erroneous admission of evidence, if it may operate to the prejudice of the defendant, necessitates a reversal of the judgment, and, though evidence other than the objectionable evidence is sufficient to justify a conviction, it does not render the admission of the objectionable evidence harmless, since it cannot be told what weight the jury gave to the evidence in reaching its verdict. 17 C. J. 319.

Nor can I concur in what is said in the prevailing opinion as to the ruling denying the accused's application for an order that witnesses be subpoened and their attendance required at the trial at the expense of the state. The ruling is affirmed on two grounds; That the cross-examination of the accused on his affidavit for the order disclosed facts which justified a finding that the accused was not impecunious, and that he, by affidavit or otherwise, had failed to show what the witnesses would testify to. The affidavit filed November 7, 1927, at the commencement of the trial, is only in general terms, that the named witnesses, eight of them, "are material and important witnesses in said action and I am unable to go to trial without their testimony and their testimony is material as a part of my defense," and that the accused "is impecunious and owing to his poverty is unable to pay the per diem and mileage of the witnesses above named," whereupon he asked that the witnesses be subpoenaed at the expense of the state. No counter affidavit was filed by the state, nor was there any claim made that the affidavit of the accused was not sufficiently specific or was wanting in statements of fact. The affidavit was not assailed on any such ground. The state, however, asked and was given the privilege to cross-examine the accused as to the averment in his affidavit of impecuniosity. The cross-examination disclosed that the accused was 25 years of age; that he was married, and had two small children; that he had no trade or occupation; that during the previous summer he worked a month or

two hauling peas for a packing company, for which he received $9 a day for himself and "for my truck"; that after that he trucked peas from another county but went behind on that job; that in the previous winter he hauled wood and did other work, and earned from $30 to $50 a month; that he did not own his own home, and paid rent from $10 to $20 a month, that he was not able to employ an attorney, but his father helped him to employ one. "Q. And if you have to have more money to subpoena witnesses he will help you on that? A. He will if I cannot get it from the—," and there the inquiry ended. It was not shown that all the earnings of the accused received by him in the previous summer or winter were not consumed in the maintenance of his family and of himself or was not otherwise legitimately paid out, or that when he filed his affidavit or was cross-examined he had a dollar, or any kind of employment, or was earning anything, or had any kind of property, except from an expression in giving his testimony that for the first month or two hauling peas he received "$9.00 a day for myself and my truck." But he was not asked, nor was it shown, that the truck belonged to him or whether it was incumbered or not, or what its value was or whether it was salable. Upon such examination, the court, on the ground that the accused was not impecunious, denied his application. I think the ruling was not justified by what was disclosed by the cross-examination—and there was nothing else offered to dispute the accused's affidavit—and that the ruling was erroneous. Besides, we have a constitutional provision, article 1, § 12, which provides that in criminal prosecutions the accused shall have the right, among other enumerated rights, "to have compulsory process to compel the attendance of witnesses in his own behalf. * * * In no instance shall any accused person before final judgment, be compelled to advance money or fees to secure the rights herein guaranteed." Our attention has not been called to any case from this jurisdiction where such provision of the Constitution has been con-

sidered or construed. Holding, as I do, that the showing was sufficient to show that the accused was impecunious, and that his application under the statute ought to have been granted, it is not necessary to express an opinion as to the accused's rights in such particular under the Constitution. But on a holding that the accused was not impecunious, then, before the ruling of ths district court denying the application may properly be approved, it is essential to consider and determine the rights of the accused in such particular under the Constitution. That is not done in the prevailing opinion.

I think the ruling should not be affirmed or approved on the ground that the affidavit did not disclose what facts would be testified to by the witnesses. The affidavit was not in the court below challenged on that ground. Had it been, any such defect might have been avoided by an amended or new affidavit. I concur in the view that it is essential to show the witnesses desired to be subpoenaed at the expense of the state are material witnesses. But I do not concur in the view that it is essential to aver or set forth just what facts would be or are expected to be testified to by the witnesses with such particularity as is required when an application is made for a continuance on the ground of an absent witness or witnesses. On such an application as here, the state is not entitled to be so forewarned or forearmed. It is enough if it is made to appear that the witnesses had knowledge of transactions, subjects, or facts relevant and material to the issue, and that it was expected the witnesses concerning such matters would give testimony favorable to the accused. Until the affidavit was challenged I think the general averments of the affidavit as to the materiality of the witnesses were sufficient. The only matter questioned by the state in the court below was not sufficiency of the affidavit but the truth of the averment as to the impecuniosity of the accused. It ought not to be heard to do more here. To permit it to do so is to give the state an undue advantage. Further,

upon another affidavit by the accused of impecuniosity made and filed on November 29, 1927, and after conviction, and based on substantially the same facts as made to appear at the commencement of the trial, the court, on December 6, 1927, made and filed an order that the accused was "impecunious and owing to his poverty has no money or other property with which to pay for a transcript of the evidence and proceedings in said action," and thereupon ordered that a transcript of the evidence be furnished him on appeal at the expense of the state. The two rulings seem to be irreconcilable. Apparently the state and the trial court ruling with it were unwilling to aid the accused on the trial to procure witnesses in his behalf, but, after a conviction was had without his witnesses, his presumption of innocence gone, and one of guilt established by the judgment, were willing, because of his impecuniosity, to aid him in a review of the judgment.

I think the judgment should be reversed, and a new trial granted.